322 So.2d 180 (1975)
In re Judge Joseph B. DUPONT, Sr., City Court of Plaquemine, Plaquemine, Louisiana.
No. 56572.
Supreme Court of Louisiana.
November 3, 1975.
*181 William R. Alford, Jr., New Orleans, Sp. Counsel for The Judiciary Commission of La.
A. J. McNamara, H. D. McNamara, Jr., Metairie, for Hon. Joseph B. Dupont, Sr.
CALOGERO, Justice.
This is a disciplinary proceeding on the recommendation of the Judiciary Commission of Louisiana pursuant to Art. 9, § 4, La.Const. of 1921, as amended by Act 661 of 1968. (See corresponding provision, Art. 14, § 16 under the La.Const. of 1974).
After a three day hearing, the commission determined that Judge Joseph B. Dupont, Sr., City Judge of the City of Plaquemine, Louisiana was guilty of willful misconduct relating to his official duty and willful and persistent failure to perform his duty.
The commission thereupon determined by a margin of 7 to 1 that Judge Dupont should be censured and that such a recommendation should be made to this Court.[1] The commission had charged the respondent judge with five specifications of willful misconduct. They found two of the charges untrue. As to the three others, however, they made the following finding of fact:
"As to Count One, we find as a fact that you, Judge Joseph Dupont, did, on February 3, 1974, at your residence in Iberville Parish, Louisiana, did receive information from Warren Ard that two guns in your possession, to-wit: One Browning automatic shotgun and one Winchester rifle, were stolen property and that when you received this information, you then and thereafter willfully and persistently failed to report that information to proper authority.
"As to Count Two, we find as a fact that on or about February 8, 1974, at your residence in Iberville Parish, Louisiana, you transferred two guns, to-wit: One Browning automatic shotgun and one Winchester rifle to Warrent Ard for a consideration, after having been advised by the said Warren Ard that the two guns were stolen property, when your official duty required you to report your possession to the proper authorities.
"We also find as a fact, in regard to Count Five, that Joseph Dupont, Sr., in receiving information from Warren Ard, on the 3rd day of February, 1974, that two weapons; namely, a Browning automatic shotgun and a Winchester rifle in his possession were stolen, did, after approximately a five-day delay, transfer these weapons to Warren Ard under circumstances designed to keep the transaction secret even to the extent of wiping the weapons for fingerprints.
"We further found as a fact that Judge Dupont did continue to willfully continue to possess and conceal said weapons for a period of about five days, knowing that such possession and concealment may have been a criminal act and that you did relinquish possession of these weapons only upon receipt of a sum of money."
The occurrence which gave rise to the charges and commission findings was as follows. Respondent, then as now a practicing *182 lawyer, was elected City judge, City Court of Plaquemine, a parttime judicial position and took office on December 8, 1973. Serious political differences existed between respondent and the Sheriff of the Parish of Iberville, which were aggravated by the Sheriff's refusal to honor release bonds set by Judge Dupont. A Contempt Rule was filed by the respondent against Sheriff Ourso in response to which the Sheriff instituted quo warranto proceedings questioning the respondent's authority to hold office.
In late January and February, 1973 while respondent was daily appearing in East Baton Rouge district court defending the quo warranto proceeding, he was approached by Warren Ard, a former client of his, who was then, unbeknown to Dupont, cooperating with the Sheriff in an undercover investigation. The respondent judge had purchased a rifle and a shotgun three or four years before February 1974, from Earl Medlock, another former client. Ard informed respondent that the guns he had purchased from Medlock were stolen, and that it was essential for him, Ard, to recover the guns and turn them over to the sheriff's department in order to avoid criminal sanctions for certain other of his activities.
The respondent denied knowing that the guns had been stolen, attempted to reassure Ard, and agreed to discuss the matter with him further. Respondent informed Ard that he did not know whether one of the guns was available.
Within the next week, after several conversations with Ard, the respondent fixed a price on the guns and agreed to sell them to Ard, who continued to urge his desperate need for possession of the weapons in order to avoid incarceration.
Ard paid the respondent $280.00; respondent then directed Ard to the guns in the back yard of his home, on a woodpile. Throughout the week the respondent had advised Ard to employ a clandestine method in turning the guns over to the authorities in order to avoid Ard's being incriminated.
Shortly following sale of the guns respondent was arrested and charged with receiving stolen goods.
Following respondent's arrest a preliminary hearing was held in the Eighteenth Judicial District Court for the Parish of Iberville. Upon a finding that there was not probable cause to hold him, the defendant Judge was ordered released. He was not thereafter tried. He has not been convicted of any criminal offense arising out of this incident.
Respondent's contention was that he did not know at the time he received the guns in question that they were stolen, that even after repeated advice from Ard, he was not certain that they were, that during the period 2/1/74 to 2/8/74, while he was communicating with Ard, an attorney-client relationship existed between him and Ard; that receiving an amount of money equal to the fair value of guns, would not only reimburse him his out of pocket costs (for guns which belonged to him either because not stolen, or by virtue of a three year acquisitive prescription on movables), but would also obviate the possibility of Ard's attempting to profit financially by the transfer.
The commission's findings were in part at variance with these contentions. The commission concluded that Judge Dupont received information that the guns in his possession were stolen in February 1974 and willfully and persistently failed to report that information to the proper authorities; that he transferred the guns after having been advised that they were stolen property when his official duty required him to report their possession to the proper authorities; that he transferred the weapons to Warren Ard under circumstances designed to keep the transaction secret even to the extent of wiping the weapons for fingerprints; that he did possess and *183 conceal the weapons for a period of five days knowing that such possession and concealment may have been a criminal act; and that he did relinquish possession of the weapon only upon receipt of a sum of money.
Upon a review of the transcript of the commission hearing, including tapes of the Ard-Dupont conversations, we agree with the commission's factual findings.
Accordingly, we find no merit in respondent's contention that the evidence does not "support the commission's findings or justify its recommendation," although we are, like the commission, cognizant of all the attendant and peculiar circumstances surrounding Judge Dupont's conduct during the first week of February, 1973.
Respondent urges two other errors in opposing the recommendation of the commission. The first is that the commission should have permitted prehearing discovery by depositions and interrogatories. The second is that the constitutional grant of authority to the Judiciary Commission does not permit the disciplinary action recommended by the commission.
As to the first, the commission was of the opinion that granting prehearing discovery was a matter solely within its sound discretion. In argument before us, the respondent does not demonstrate any prejudice to him because of the lack of prehearing discovery. He was permitted access to the tape recorded conversations which formed the basis of the accusation against him. The respondent was informed that if at the conclusion of the hearing he felt that he had been surprised by any evidence adduced, he would be allowed time to produce additional evidence. No such request was made, nor has respondent applied for permission to file additional evidence pursuant to Rule 23, § 13 of the Rules of the Louisiana Supreme Court governing proceedings of the Judiciary Commission. We are of the opinion that there was not "fundamental unfairness" to the respondent in denying him prehearing discovery procedures. This is particularly true since the factual basis of the commission's recommendation is uncontroverted by the respondent.
As for the second of the additional specifications of error, this Court in State ex rel. Gremillion v. O'Hara, 252 La. 540, 211 So.2d 641 (1968), did censure the respondent judge under Arts. 9 and 5 of the 1921 Constitution as it existed prior to 1968. The greater power to remove from office includes the lesser power to censure. Similarly, in our view, the Judiciary Commission's right under the 1921 La. Const. (Art. IX, Sec. 4 subd. D) to recommend "the removal or involuntary retirement of a justice or judge" includes the lesser power to recommend censure.
At the time respondent took office, each elected public official took the oath of public office prescribed by Art. XIX, § 1 of the Louisiana Constitution of 1921 to support the Constitution and laws of the United States and the Constitution and laws of this State, and to faithfully and impartially discharge and perform all the duties incumbent on him.
Further Art. IX, § 4 of the Constitution of 1921 permits removal from office:
"A justice or judge may be removed from office or retired involuntarily for wilful misconduct relating to his official duty or wilful and persistent failure to perform his duty, or for habitual intemperance, or for conviction, while in office, of a felony."
The Canons of Judicial Ethics clearly express the level of propriety which members of the judiciary should endeavor to maintain:
"I. THE JUDICIAL OBLIGATION
"The assumption of the office of judge casts upon the incumbent duties in respect to his personal conduct which concern his relation to the state and its *184 inhabitants, the litigants before him, the principles of law, the practitioners of law in his court, and the witnesses, jurors and attendants who aid him in the administration of its functions.
"In every particular his conduct should be above reproach. He should be conscientious, studious, thorough, courteous, patient, punctual, just, impartial, fearless of public clamor, regardless of public praise, and indifferent to private political or partisan influences; he should administer justice according to law, and deal with his appointments as a public trust, he should not allow other affairs or his private interests to interfere with the prompt and proper performance of his judicial duties, nor should be administer the office for the purpose of advancing his personal ambitions or increasing his popularity. As a necessary corollary, the judge must be protected in the exercise of his judicial independence.
". . .
"IV. AVOIDANCE OF IMPROPRIETY
"A judge's official conduct should be free from impropriety and the appearance of impropriety and his personal behavior, not only upon the Bench and in the performance of Judicial Duties but also in his everyday life, should be beyond reproach."
Although the Canons of Judicial Ethics have great importance and meaning to members of the judiciary in setting the standard of conduct expected of members thereof, they do not replace or modify the Constitution. However, if disregard of the Canons or of any other standard of conduct is of such serious nature as to constitute "wilful misconduct . . . or wilful and persistent failure to perform his duty," then an elected official is subject to removal from office. State v. O'Hara, supra; In re Haggerty, 257 La. 1, 241 So.2d 469 (1970).
In O'Hara, supra, where the court found "misconduct" but not "gross misconduct," the court recited that the grounds enumerated in the Constitution for which a judge may be removed from office are subject to strict construction since they are quasi penal, and there can be no removal except on the grounds therein enumerated. In that case, and again in Haggerty, supra, we recited what was meant by the term "misconduct:"
"Misconduct, `in general, is improper conduct or wrong behavior, but as used in speech and in law it implies that the conduct complained of was willed and intentional. It is more than that conduct which comes about by reason of error of judgment or lack of diligence. It involves intentional wrongdoing or total lack of concern for one's conduct. Whether or not an act constitutes misconduct must be determined from the facts surrounding the act, the nature of the act, and the intention of the actor.'" 211 So.2d 641, 648. (Emphasis provided)
Further, in Haggerty, supra, we made it clear that "misconduct relating to office" includes conduct both "on" and "off" the bench:
". . . The conduct as constitutionally condemned and denounced is not `misconduct in office;' it is `misconduct relating to office.' The term `relating to' implies not only misconduct of a judge while performing his judicial duties but activities relevant or pertinent to the performance of his duties and responsibilities, or having a connection or a logical or natural association with the performance of his duties and responsibilities.. . ." 241 So.2d 469, 478.
The commission obviously determined that respondent's conduct in the particulars they found supported by the evidence, and in light of all the attendant facts and circumstances was not sufficient "wilful misconduct relating to his official duty" or clearly "persistent failure to perform his *185 duty" as would warrant recommending Judge Dupont's removal from the bench. They did, however, find sufficient misconduct to warrant a censure.
We agree with the findings, and the recommendation of the Judiciary Commission that Judge Dupont should be censured. Accordingly we do hereby formally censure Judge Joseph B. Dupont, Sr. for conduct unbecoming a member of the judiciary. His conduct and personal behavior in the particulars hereinabove enumerated, while not constitutionally warranting his removal from office, was disparaging and inconsistent with the high degree of trust placed in him by the electorate.
DIXON, J., concurs and assigns reasons.
BARHAM, J., dissents, being of the opinion that the facts warrant at least suspension and perhaps removal of the judge.
DIXON, Justice (concurring).
I concur with the majority, but only to the extent that censure is the very least disciplinary measure possible in this case. Four members of the commission favored more serious measures.
The record in this case reflects no mitigating circumstances and no redeeming qualities on the part of respondentno recognition of wrongdoing, no remorse, no regrets, and no dispute of the basic facts giving rise to disciplinary action.
Dupont knew the owner of the guns, from whom they had been stolen years before. He made no effort to communicate with him. Instead, he attempted to conceal his connection with the weapons. Throughout the transaction his only purpose (disclosed by several taped conversations with Ard) was to keep the guns or get his money back. There was no consideration for Ard, and if Ard had not come up with the money, Dupont was willing for him to take the consequences.
Such demonstrated amorality and venality should disqualify any person from any bench. Respondent should be removed from office.
NOTES
[1] One member, believing that Judge Dupont committed serious errors of judgment and that his conduct was not that which one expects of a judicial officer under normal circumstances, found nonetheless that his actions did not amount to willful misconduct which would warrant disciplinary action. On an earlier vote, that same member similarly was against any disciplinary action, three members favored censure, two members favored suspension and two members favored removal from office.