**In the Matter of Honorable L. D. CARSTENSEN, Judge of the Seventh Judicial District.**

No. 67246.

Supreme Court of Iowa.

March 17, 1982.

890

Thomas J. Miller, Atty. Gen., and Harold Young, Asst. Atty. Gen., for the Commission.

Donald A. Wine of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for L. D. Carstensen, Judge.

SCHULTZ, Justice.

This is an original proceeding pursuant to application by the Iowa Commission on Judicial Qualifications to discipline The Honorable L. D. Carstensen, Judge of the Seventh Judicial District, for failure to comply with the provisions of Iowa S.Ct.R. 200. Following an evidentiary hearing, the Commission concluded that "Judge Carstensen failed to make and timely file accurate and complete records of the matters pending before him in persistent, flagrant disregard of rule 200." The Commission unanimously recommended that Judge Carstensen be disciplined. A majority of the commissioners recommended that he be suspended for a period of thirty days without pay. A minority of the commissioners, however, did not believe the Commission had authority to recommend what disciplinary action, if any, should be taken by this court. We grant the Commission's application and, with slight modification, impose the sanction recommended by the Commission.

I. *The judicial qualifications functions of the Commission and this court.* This is the first time we have had to consider an application by the Commission to discipline a judge. Consequently, it is our first opportunity to review the function of the Commission and its relationship to this court.

The Iowa Constitution provides:

[T]he Supreme Court shall have power to retire judges for disability and to discipline or remove them for good cause, upon application by a commission on judicial qualifications. The General Assembly shall provide by law for implementation of this section.

Iowa Const. art. V, § 19, *as amended by* amend. 33 (1972). Responding to this mandate, the legislature enacted legislation creating the Commission, specifying its duties and methods of operation, and defining the powers of this court with respect to judicial qualifications. *See* 1973 Session, 65th G.A., ch. 285, *codified at* §§ 605.26–.32, The Code.

A charge against a judge must be made in writing. After an investigation, the Commission may: (1) dismiss the charge if it is groundless; (2) dispose of the charge by informal conference with or communication to the judge if the charge appears to be substantiated but not of sufficient severity to warrant application to this court; or (3) hold an evidentiary hearing, which results in dismissal of the charge or application to this court to retire, discipline, or remove the judge. § 605.29, The Code.

Upon application to this court, it is our responsibility to review the record as in an appeal of an equity action and render an appropriate decree. § 605.30, The Code. Section 605.27, The Code, authorizes us to retire a judge "for permanent physical or mental disability which substantially interferes with the performance of his or her judicial duties" and to discipline or remove a judge "for persistent failure to perform his duties, habitual intemperance, willful misconduct in office, conduct which brings judicial office into disrepute, or substantial violation of the canons of judicial ethics."

Although the judicial qualifications legislation authorizes the Commission to "make application to the supreme court to retire, discipline, or remove" a judge, § 605.29(2), The Code, the legislation does not expressly specify whether the Commission is authorized to recommend what sanctions should be imposed by this court. During the proceedings on this charge, the Commission expressed concern over whether it had authority to make such a recommendation, and a minority of the commissioners concluded that it did not. Although it is not an issue in this case, we will discuss the matter for purposes of future guidance to the Commission.

The obvious purpose of the enactment of the judicial qualifications legislation is to maintain the integrity of the judicial branch of government by providing a fair and efficient method for determining whether an ailing judge should be retired or

an errant judge removed or disciplined. In carrying out its statutory duties, the Commission functions in more than an evidence-gathering capacity; it determines whether the charges made against a judge are substantiated and of sufficient gravity to warrant consideration by this court. In conducting a hearing, the Commission has an opportunity to view and confront the witnesses, including the judge charged, and pass on their credibility. When an application is made to this court, we do not rehear the evidence but rely on the record supplied to us. Consequently, a recommendation as to disposition of the case gives perspective to the Commission's findings of fact and is beneficial to this court's endeavor to arrive at a just determination.

■ The Commission has express authority to recommend that a judge be disciplined. A recommendation as to the specific sanctions that should be imposed by this court promotes the overall purposes of the judicial qualifications legislation and is merely incidental to the Commission's express power. In several jurisdictions in which this issue has been considered, review boards have been found to possess implied constitutional or statutory authority to recommend specific sanctions when express authority did not exist. *E.g., In re Dupont,* 322 So.2d 180, 183 (La.1975); *In re Diener,* 268 Md. 659, 682–83, 304 A.2d 587, 600 (1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974). We likewise conclude that the Commission has such implied authority under article V, section 19 and chapter 605. However, the Commission's recommendation is not conclusive. Since our review is de novo, we evaluate the circumstances of the case independently and will substitute our judgment for that of the Commission when appropriate.

II. *Failure to comply with rule 200.*

A. *Origin and nature of the charge.* On January 21, 1981, Chief Justice W. W. Reynoldson notified the Commission in writing that the Supreme Court had re-ceived numerous complaints that Judge Carstensen was not satisfactorily performing his judicial duties in several specified areas. After a preliminary investigation of these charges, the Commission served Judge Carstensen with notice that charges had been made against him and that it had scheduled a hearing thereon. The charges specified in the notice pertained to only one area of the original complaint—failure, at various times and in various ways, to comply with the requirements of rule 200. At the hearing, which was held on August 26, 1981, the Office of the Attorney General, which has the responsibility of prosecuting charges before the Commission on behalf of the State, § 605.29(2), The Code, and Judge Carstensen submitted a joint statement of agreed facts. On September 4, the Commission rendered its Findings of Fact, Report Recommendations, and Application, which recommended disciplinary action by this court for noncompliance with rule 200.

B. *Rule 200.* Iowa S.Ct.R. 200 provides:

Each senior judge, district judge, district associate judge and judicial magistrate shall report monthly to the supreme court, through the office of the court administrator of the judicial department, all matters taken under advisement in any case for longer than sixty days, together with an explanation of the reasons for the delay and an expected date of decision. If no matters have been taken under advisement over sixty days, the report shall state "none". Senior judges need only file reports for those months during which they perform judicial duties or have matters under advisement.

Any submission shall be reported when all hearings have been completed and the matter awaits decision without further appearance of the parties or their attorney. A matter shall be deemed submitted even though briefs or transcripts have been ordered but have not yet been filed.

The report shall be due on the tenth day of each calendar month for the period

ending with the last day of the preceding calendar month. The first report shall be due January 10, 1978. The report shall be signed by the judge or magistrate and submitted on a form prescribed by the court administrator.

The court administrator shall promptly cause all reports received to be filed in the office of the clerk of the supreme court as records available for public inspection.

This rule was promulgated pursuant to the constitutional and statutory rule-making powers of this court: the Iowa Constitution provides that "the supreme court ... shall exercise a supervisory and administrative control over all inferior judicial tribunals throughout the state," Iowa Const. art. V, § 4, *as amended by* amend. 21 (1962), and section 684.21, The Code, stipulates that "[t]he supreme court shall adopt and enforce rules for the orderly and efficient administration of the courts inferior to the supreme court, which rules shall be executed by the chief justice."

■ Rule 200 was designed to provide a system of accountability, promoting the orderly and expeditious disposition of all matters submitted to a judge or magistrate. With the ever-increasing time demands placed on the trial bench by massive case loads; difficult, new, and complex litigation; and public scrutiny, it is imperative that those responsible for administering the judicial system be apprised of the status of each judge's individual case load. The reporting system established by rule 200 enables the individuals who make case assignments to afford relief or provide assistance to judges who have fallen behind on their case loads. While some members of the trial bench may look at rule 200 as an attempt to police their activities, most judges use the rule constructively—as a means of self-discipline—to promptly dispose of pending matters.

■ Rule 200 reports are vital to the efficient administration of our judicial sys-

tem, and, as such, they are a necessary duty, which we expect to be followed and will enforce. Section 605.27(2) empowers this court to discipline a judge for, *inter alia*, "persistent failure to perform his duties" and "substantial violation of the canons of judicial ethics." Canon 3(B)(1) of the Iowa Code of Judicial Conduct provides: "A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials." Compliance with rule 200 clearly falls within the ambit of this canon.

■ Section 605.27(2) authorizes disciplinary action only for "persistent" failure to perform judicial duties and "substantial" violations of the canons of judicial conduct. A certain amount of "honest" error in submitting rule 200 reports may be expected. However, when the violations are blatant, flagrant, and repeated, they should not and will not be condoned.

■ Generally, there are four ways in which rule 200 may be violated: (1) not submitting a report; (2) submitting an untimely report; (3) omitting cases; and (4) reporting cases in an untimely manner. Our de novo review of the facts supports the Commission's finding that Judge Carstensen violated the rule in each of these four ways.

■ C. *De novo review of the facts.* During the first thirty-seven months that rule 200 reports were required, Judge Carstensen failed to comply with the rule's provisions on twenty-eight occasions. He failed to submit five reports and submitted twenty-three reports late. In 1978 four reports were submitted from fifteen to forty-five days late and reports for November and December were not submitted. In 1979 eight reports were submitted from eight to 115 days late and reports for the months January through March were not sub-

mitted. In 1980 eleven reports were submitted late.

Prompting letters were sent to Judge Carstensen by the supreme court administrator on several occasions, reminding him of his duty to submit reports. On October 22, 1979, Chief Justice Reynoldson wrote Judge Carstensen directing him to comply with rule 200. On January 7, 1980, the Chief Justice and the supreme court administrator traveled to the Seventh Judicial District and discussed Judge Carstensen's noncompliance with rule 200 with him and the chief judge of the district. On that date Judge Carstensen submitted the monthly report that was due on January 10. The balance of the reports due in 1980 were submitted late, however. From February through June the reports were one to seven days late, and reports for the months July through December were ten to forty-three days late.

Judge Carstensen also failed to comply with rule 200 by completely omitting eight cases from required reports and by reporting seven cases that should have been listed on previous reports. Judge Carstensen maintains that these incidents do not show any intent to avoid his responsibility to report cases or his duty to make timely rulings on matters pending before him. He points out that fifteen of the twenty-seven cases listed on his reports were reported correctly. He alleges that of the remainder, five cases were reported late only because no report was submitted for the appropriate month, and these five cases were reported subsequently when reports were submitted. He also notes that of the eight cases that were omitted, three were motions that were decided before he realized that motions had to be included in rule 200 reports and two were dissolution of marriage proceedings in which decrees were filed in seventy and ninety-five days. He admits that the three remaining cases were overlooked and that one of them had been pending for seven months.

In addition, Judge Carstensen failed to include in his January 10, 1978, report four

cases decided on January 9 and 10. These cases were pending on January 1 and therefore should have been included in the report. The first investigative report prepared by the attorney general's office stated that Judge Carstensen was attempting to "beat the deadline." In response, Judge Carstensen stated that his action showed agreement and cooperation with the spirit of the rule.

Our independent review of the facts leads us to the conclusion that Judge Carstensen blatantly, flagrantly, and persistently disregarded the requirements of rule 200. He failed to submit five reports and has given no reasonable explanation for these omissions. He consistently submitted reports late, completely omitted some matters required to be reported, and reported other matters on reports subsequent to the ones they should have originally been reported on. Furthermore, he paid little or no heed to the letters reminding him of his responsibilities under rule 200 and ignored the admonitions of the Chief Justice. The gravity of Judge Carstensen's noncompliance with the requirements of rule 200 warrants disciplinary action by this court.

III. *Discipline.* As already noted, the discipline recommended by the Commission is suspension from office for a period of thirty days without pay. Judge Carstensen maintains that this sanction is far too severe, and that mitigating factors, such as his good faith and the prevailing practices of other judges, should be considered.

 First, he contends that although section 605.27(2) expressly only provides for suspension without pay, less-severe sanctions are implicitly authorized. We agree with this assessment. Section 605.27(2) provides that "[d]iscipline *may include* suspension without pay for a period of time not to exceed twelve months." (Emphasis added). The terms "may include" clearly imply that less-severe forms of discipline may be imposed. *Cf. In re Anderson,* 312 Minn. 442, 448, 252 N.W.2d 592, 594–95 (1977) (unless

judicial-discipline statute provides to contrary, power to remove implicitly authorizes imposition of less-severe sanctions).

Judge Carstensen also asserts that we should consider the number of cases listed by other judges on their rule 200 reports. As the Commission determined, however, this factor is irrelevant to the charges against Judge Carstensen. The issue here is not the number of cases listed on his rule 200 reports, but his noncompliance with the requirements of the rule in listing and failing to list those cases.

Although Judge Carstensen has cited us cases from other jurisdictions in which censure and reprimand, rather than suspension, were imposed for noncompliance with financial reporting requirements, we believe the nature and frequency of the rule infractions in this case warrant a more severe sanction. We have carefully considered the sanction recommended by the Commission and find it appropriate with slight modification. It is therefore ordered that, effective April 23, 1982, Judge L. D. Carstensen is suspended from office without pay until May 21, 1982. This opinion shall not be construed to prevent an arrangement by Judge Carstensen to keep in force his health and life insurance coverage at his own expense during the period of suspension.

APPLICATION GRANTED AND DISCIPLINE ORDERED.

All justices concur except ALLBEE, J., who concurs in part and dissents in part, and LeGRAND and HARRIS, JJ., who take no part.

ALLBEE, Justice (concurring in part and dissenting in part).

While I am satisfied that Judge Carstensen knowingly and persistently disregarded the requirements of rule 200 and that his conduct is deserving of censure by this court, I believe that the penalty exacted is greater than warranted under the circumstances. A penalty that deprives one of eight and one-third percent of his gross annual judicial compensation is a high price to pay under any set of circumstances, and, it seems to me, is out of proportion to the defalcation here. Certainly a censure would constitute punishment in the form of a rebuke by this court; a censure would indelibly blemish the judge's record of service; a censure without doubt would be the cause of chagrin and ignominy to the judge. A censure, in addition, would serve as notice to others that such inattention to judicial duties does not go unnoticed and will not go unpunished. Thus, I concur in the court's findings but dissent from the sanction imposed.