In the Matter of Honorable Sheila HARNED, Judicial Magistrate, Wayne County Fifth Judicial District.

No. 84–758.

Supreme Court of Iowa.

Nov. 14, 1984.

Thomas J. Miller, Atty. Gen., and Richard A. Williams, Asst. Atty. Gen., for the commission.

Mark S. Pennington, Des Moines, for Sheila Harned, Judicial Magistrate.

WOLLE, Justice.

This is an original proceeding brought in this court at the instance of the Commission on Judicial Qualifications (hereinafter the commission) acting in accordance with Iowa Code section 602.2104(2) (1983 Supp.).[1] These proceedings follow a hearing before the commission on charges of misconduct against Sheila Harned, a judicial magistrate.

The commission concluded, following the hearing, that Magistrate Harned had been guilty of a substantial violation of the Iowa Code of Judicial Conduct by utilizing her judicial position in an attempt to influence the disposition of a traffic citation issued to her daughter. The facts developed before the commission were, in significant part, not disputed.

Sheila Harned has been a judicial magistrate in Wayne County since March of 1976. She is the only judicial magistrate in that county. On August 19, 1983, Magistrate Harned's sixteen-year-old daughter, a recently licensed driver, was issued a citation in Appanoose County for driving at a legally excessive rate of speed. Magistrate Harned was riding in the automobile with her daughter when this occurred.

Magistrate Harned testified at the hearing before the commission that while both she and her daughter preferred merely to

1. The statutes to which we refer in this opinion are identified according to the renumbering which became effective July 1, 1983, as a result of 1983 Iowa Acts ch. 186, §§ 3101–07. These are the same statutes identified in the commission's decision by reference to an earlier codification.

pay the fine and costs attributable to this scheduled violation, they were encouraged by Magistrate Harned's husband to seek a more favorable disposition on the speeding charge. This course of action was prompted, in part, by the belief of both Magistrate Harned and her husband that the speedometer on the automobile which their daughter had been driving was inaccurate. This automobile had been acquired by the Harned family the same day that the citation was issued and was of a type which their daughter had not previously driven.

On August 29, 1983, Magistrate Harned typed a letter on the typewriter located in her magistrate's office. The letter was written on the official stationery of the magistrate's office indicating her name and title. The substance of the letter is as follows:

August 29, 1983
Appanoose County Magistrate
Appanoose County Courthouse
Centerville, IA 52544
Dear Jean and/or Paul:

Re: Ticket P807790

I am involved in a situation of which I am needing your assistance. On 8–19 my daughter and I were going to Centerville to finish up on her school shopping. We had traded cars with my husband and she was driving his demo. This car had been purchased at the Metro Car Auction in Kansas City the preceding week and apparently the speedometer was not registering correctly.

Speeding is something I am extremely conscious of due to the fact that I simply to not want to get a traffic ticket. Therefore, any family member I am riding with also is keenly aware of my feeling on speeding. Had Tawnia been by herself and received this ticket I would have encouraged her to just pay the ticket. But I was with her and know she is also extremely conscious of her speed and was exercising all due respect of the law while driving.

Needless to say there are many variables that could enter into this situation. The fact that this was a car we were not familiar with, the speedometer was incorrect, etc. Whatever the reason, I am hoping you will understand this situation and be able to handle this ticket in such a way as to keep it off her driving record.

I am not familiar as to how you would handle this in your county but in Wayne County that could be done either by dismissal, giving the person possibly a probationary period, if after such designated time she met the conditions placed upon her by the court the citation could be dismissed, etc.

I will plan on contacting your court on Wednesday to discuss this situation with whoever is in the office that day and you can let me know how to proceed. Thanks.

Yours very truly,
/s/ Sheila Harned
Sheila Harned

Magistrate Harned testified that "Jean and/or Paul" were the two judicial magistrates in Appanoose County. She indicated that she was acquainted with both of them. Sometime between August 29 and September 22 Magistrate Harned telephoned the office of the judicial magistrate in Appanoose County and spoke with one of the magistrates. She discussed the dispositions of the traffic charge suggested in her letter of August 29.

The response of the magistrate with whom this telephone contact was made was to suggest to Magistrate Harned that she was "reacting as a mother rather than a magistrate" and that she take some additional time to think about her course of conduct. Magistrate Harned testified that this response from the Appanoose County magistrate prompted her to mail to the court in Appanoose County a written plea of not guilty on behalf of her daughter. That written plea, dated September 22, 1983, was also typed on the official stationery of her judicial magistrate's office.

The speeding charge was subsequently set for trial in Appanoose County, but due to a misunderstanding, Magistrate

Harned's daughter failed to appear at the scheduled time. Shortly thereafter, a written plea of guilty and a check for the fine and costs attributable to the particular scheduled violation were tendered to the court in Appanoose County.

The commission found that the manner in which Magistrate Harned communicated with the Appanoose County magistrates was a violation of Canon 1 and Canon 2 of the Iowa Code of Judicial Conduct. These canons provide, in part:

## CANON 1

*A Judge Should Uphold the Integrity and Independence of the Judiciary*

... A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved.

## CANON 2

*A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities*

....

... He should not lend the prestige of his office to advance the private interests of others ....

As a consequence of its findings, the commission has applied to this court pursuant to section 602.2104(2) requesting that Magistrate Harned be disciplined.

The function, relationship and procedure surrounding applications to this court by the Commission on Judicial Qualifications was fully discussed in *In the Matter of Carstensen*, 316 N.W.2d 889, 891–93 (Iowa 1982), and what we said in that case need not be repeated here. Our purpose continues to be the maintenance of the integrity of the judicial branch of government, and it is with this end in mind that we view the present proceeding.

In the response which she has filed in this court, Magistrate Harned urges that her conduct was not an intentional attempt to use her position for the advancement of personal goals. She characterizes her actions as "an attempt by a mother to request the same consideration for her daughter that is granted to others in similar situations." We believe that this response misperceives the manner in which her conduct offends against the code of judicial conduct. The fact that the suggestions which she made for disposition of her daughter's traffic charge were not necessarily improper does not excuse the manner in which these suggestions were communicated to the court in Appanoose County.

These suggestions were made by ex parte communications to the court.[2] In addition, for the reasons found by the commission, the communications were made in a manner which unmistakably lent the prestige of Magistrate Harned's judicial office to the advancement of her daughter's cause. We thus find that the conclusions of the commission with respect to the asserted violations of the code of judicial conduct are fully warranted.

■ The commission has recommended that Magistrate Harned be disciplined by reprimand and suspension for four days without pay with no loss of fringe benefits. On the issue of discipline, we held in *Carstensen*, 316 N.W.2d at 892, that we must evaluate the circumstances of each case independently. The recommendations of the commission are not conclusive, and we will substitute our judgment for that of the commission to the extent that we disagree with its conclusions. *Id.*

■ In determining an appropriate discipline in cases of judicial misconduct, our primary concern is to provide sanctions sufficient to restore and maintain the dignity and honor of the judicial office and to protect the public against future excesses. Each case must be judged in light of its

**2.** Magistrate Harned's conduct was found by the commission to offend against Canon 1 and Canon 2 of the Code of Judicial Conduct. We note that this ex parte communication to the court also offends against Canon 3 of the Code of Judicial Conduct.

own particular circumstances. Although a period of suspension may produce a disruptive effect on the local jurisdiction in which a magistrate holds office, this circumstance must not be permitted to· dissuade us from imposition of such sanction where a lesser penalty serves to depreciate the seriousness of the offense.

■ In assessing all of the foregoing considerations, we conclude that the sanctions recommended by the commission are commensurate with the seriousness of the offense and should therefore be imposed. It is ordered that Magistrate Sheila Harned be reprimanded and that she be suspended for four days without pay, provided, however, that she realize no loss of fringe benefits. The suspension shall be imposed for four consecutive days within a single biweekly pay period. The resulting loss of pay shall amount to 4/365ths of the gross annual pay for that judicial office for the fiscal year commencing July 1, 1984. The date upon which the period of suspension shall commence shall be fixed and determined by the Chief Judge of the Fifth Judicial District based upon his assessment of the administrative problems which may result from this temporary reduction in personnel.

APPLICATION GRANTED AND DISCIPLINE ORDERED.

All Justices concur except SCHULTZ, HARRIS, LARSON, and CARTER, JJ., who concur in part and dissent in part.

SCHULTZ, Justice (concurring in part, dissenting in part).

My only quarrel with the majority opinion concerns the discipline imposed. I do not condone the action of Magistrate Harned. It was summarized well in the response of the other magistrates that she was "reacting as a mother rather than a magistrate." I conclude that the commission overreacted to her lack of good judgment and should have disposed of the case informally without an application to this court. Since we have the matter before us, I would discipline by reprimand.

Neither the public nor the parties were harmed by Magistrate Harned's inappropriate private communication with the other magistrate. The communication was properly and promptly rebuffed. This does not excuse the action, but the extent of the harm is a consideration in determining the appropriate discipline.

My review of the record indicates that it was obvious Magistrate Harned misunderstood her responsibilities as a judge. Undoubtedly her personal interest as a parent contributed to her lack of judgment. She did not attempt to act subtly; she communicated in writing. Although she used her magistrate's stationery, she knew that the other magistrate already was aware of her status. Although she had attended magistrate's schools and seminars, I do not believe that she understood the nature of her offense until after charges were made against her. She is not an attorney. Although the holders of a law license are given first consideration when magistrates are selected, the statutory qualifications for the office do not include a law license. Iowa Code § 602.52 (1983). County judicial magistrate appointing commissions do not always have lawyer applicants. Until a law license becomes a requirement for the position, we must examine the education and status of the applicant in determining the appropriate discipline. The understanding of the magistrate does not excuse a wrongful act, but it does bear on the magistrate's intent to violate the canons of judicial conduct. I believe that intent is an important consideration in determining the extent of discipline that is necessary and proper.

Finally, in her appearance before the commission, Magistrate Harned was forthright, honest and repentant. She acknowledged her mistakes and gave every indication that such mistakes would not occur again. I conclude that this charge was substantiated, but does not warrant application to our court for a disposition. The commission could have disposed of this case by conducting a conference with Magistrate Harned or through a private com-

munication bearing a reprimand. I cannot agree that further punitive action is necessary or advisable in this case. The public humiliation inflicted on the magistrate by this procedure and by a reprimand would be sufficient punishment. I believe that this action is more punitive than the amount of salary loss that accompanies a four-day suspension. I also believe that it is appropriate to consider the effect that a four-day suspension has on court administration in the district and on the substitute magistrate who will assume additional duties without additional pay.

HARRIS, LARSON and CARTER, JJ., join this concurrence in part and dissent in part.