**In the Matter of the Inquiry Concerning Stephen GERARD, District Associate Judge, Sixth Judicial District.**

**Stephen GERARD, Respondent.**

No. 00–1893.

Supreme Court of Iowa.

July 5, 2001.

Thomas J. Miller, Attorney General, Richard A. Williams and Roxann M. Ryan, Assistant Attorneys General, for the commission.

James E. Gritzner and John B. Tuffnell of Nyemaster, Goode, Voigts, West, Hansell & O'Brien, Des Moines, for respondent.

SNELL, Justice.

The matter before us is an original proceeding pursuant to the application by the Iowa Commission on Judicial Qualifications regarding District Associate Judge Stephen C. Gerard II. The commission conducted an evidentiary hearing that included testimony from Judge Gerard and several witnesses. Following the hearing, the commission unanimously recommended that Judge Gerard be suspended without pay for a period of forty-five days. We grant the commission's application and now impose a sanction of suspension from judicial office for sixty days.

Our authority in this proceeding is founded under the Iowa Constitution, article V, section 19. Thereunder, the supreme court has the power to discipline a judge for good cause upon application by the commission on judicial qualifications. The legislature has specified the duties of the commission and defined the powers of the court with respect to judicial qualifications. *See* Iowa Code ch. 602, art. 2, "Discipline and Removal of Judicial Officers" (1999).

The purpose of the enactment of the judicial qualifications legislation is to maintain the integrity of the judicial branch of government by providing a fair and efficient method for determining if an errant judge should be removed or disciplined. *In re Carstensen*, 316 N.W.2d 889, 891–92 (Iowa 1982). The commission functions in an evidence gathering capacity and also has authority to recommend that a judge be disciplined. However, the commission's recommendation is not conclusive. By our standard of de novo review, we evaluate the circumstances of the case independently. *Id.* at 892.

I. The Charges

The charges are prosecuted by the attorney general in the supreme court on behalf of the State. The commission filed a notice of charges and notified Judge Gerard of the charges. The notice charged that he violated the following canons of judicial ethics and the standards of conduct as specified by the cited statute.

**CHARGE I**

**[Canon 1]**

CANON 1. A judge should uphold the integrity and independence of the judiciary[.]

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved.

## CHARGE II

### [Canon 2(A) ]

CANON 2. A judge should avoid impropriety and the appearance of impropriety in all his activities[.]

A. A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

## CHARGES III and IV

### [Canon 3(A)(5), (D)(1)(c) ]

CANON 3. A judge should perform the duties of office impartially and diligently[.]

The judicial duties of a judge take precedence over all other activities. Judicial duties include all the duties of the office prescribed by law. In the performance of these duties, the following standards apply:

A. **Adjudicative Responsibilities.**

. . . .

(5) A judge should dispose promptly of the business of the court.

. . . .

D. **Disqualification**

(1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

. . . .

(c) The judge knows that the judge, individually or as a fiduciary, or the judge's spouse or minor child residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to that proceeding, or any other interest that could be substantially affected by the outcome of the proceeding[.]

## CHARGE V

### [§ 602.2106(3)(b) ]

"[C]onduct which brings the judicial office into disrepute" as contemplated by Iowa Code § 602.2106(3)(b).

## CHARGE VI

### [§ 602.2106(3)(b) ]

"[W]illful misconduct in office" as contemplated by Iowa Code § 602.2106(3)(b).

II. Scope and Standard of Review

We have held that this type of action should be treated as an equity case and that "the proper burden of proof for establishing ethical violations [is] a convincing preponderance of the evidence." *In re Inquiry Concerning Stigler,* 607 N.W.2d 699, 705 (Iowa 2000). Our standard of review is de novo. *In re Inquiry Concerning Holien,* 612 N.W.2d 789, 790 (Iowa 2000).

III. Commission's Findings

The recommendation for discipline as found by the commission was based on two general acts of misconduct. First, the

commission found that Judge Gerard was dilatory in filing rulings and in making reports on unfinished rulings as required by Iowa Supreme Court Rule 200. The reports are required to be made to the state court administrator, due on the tenth day of each month for the period ending the last day of the preceding month. These delinquencies were found to have violated Canons 1, 3(A)(5), and Iowa Code section 602.2106(3)(b).

Second, the commission found that Judge Gerard developed an intimate relationship with an assistant county attorney who regularly appeared before him in matters of litigation. The commission found that Judge Gerard failed to recuse himself from these matters when he should have and failed to disclose the relationship to anyone, including criminal defendants and their attorneys in cases handled by this assistant county attorney. These acts were found to have violated Canons 1, 2(A), 3(D)(1)(c), and Iowa Code section 602.2106(3)(b).

IV. Dilatory Filings

■■■ Iowa Supreme Court Rule 200 provides:

Each ... district associate judge ... shall report monthly to the supreme court, through the office of the state court administrator, all matters taken under advisement in any case for longer than sixty days, together with an explanation of the reasons for the delay and an expected date of decision.

Rule 200 may be violated in four ways, by: "(1) not submitting a report; (2) submitting an untimely report; (3) omitting cases; and (4) reporting cases in an untimely manner." *Carstensen,* 316 N.W.2d at 893.

In our de novo review, we find that the evidence supports the following factual background. Of the Rule 200 reports filed from May 1999 through September 2000, none were received by the tenth of the following months, as required. Although a few were only a few days late, two were never filed, five were substantially late, and two were filed at the hearing date. Most cases took a considerable amount of time to decide.

Judge Gerard received a private admonishment in May 1999, for late filing of Rule 200 reports. Nevertheless, a pattern of late filings continued. Moreover, a number of cases were not listed on the Rule 200 reports. On other Rule 200 reports, cases were removed from the list of unresolved cases before they were actually decided.

Cases subject to the rule included all types. There were criminal cases, including indictable offenses, traffic appeals, simple misdemeanors, small claims appeals, child in need of assistance cases, and termination of parental rights cases.

The length of delays in deciding cases varied, but a number were substantial. In 1995, four cases took an average of 944 days to decide with a median of 820 days. In 1996, twelve cases took an average of 796 days to decide with a median of 757 days. In 1997, twenty-seven cases took an average of 367 days to decide with a median of 370 days. In 1998, ten cases took an average of 187 days to decide with a median of 192 days. In 1999, thirty cases took an average of 173 days to decide with a median of 140 days. In 2000, eighteen cases took an average of 176 days to decide with a median of 173 days. Johnson County Attorney J. Patrick White testified that some pretrial rulings were delayed so long that criminal cases had to be dismissed. Delayed rulings in juvenile cases resulted in delayed adoption proceedings.

County attorney White testified that he felt Judge Gerard had an administrative

weakness that resulted in his forgetting about pending matters. He felt the judge at times became personally and professionally dysfunctional, making it difficult to focus on his work.

Judge Gerard testified that he had problems with timeliness since 1983 when he was a magistrate. He testified he was a procrastinator and tried to do too much personally and professionally. He said his problems were cyclical rather than consistent and that part of the problem was that he had not developed a good system for tracking the cases until the fall of 2000 when his court attendant began to keep track of the cases.

Judge Gerard received a private admonition in 1999 for delayed filings and reports. He was admonished to forego quasi-judicial activities until he became current in his workload. Quasi-judicial activities included teaching at judges' school and appearing as a speaker at various legal and civic functions. Unfortunately, he continued to engage in considerable quasi-judicial activities and remained dilatory in completing assigned work.

The record shows on the positive side that Judge Gerard became more current in his rulings for a time. Several attorneys testified that they and the bar in general truly respect and appreciate Judge Gerard's devotion to the care given to each case. They said they would rather have a thoughtful ruling with some delay than a ruling without careful deliberation filed on time to beat the clock. There is also evidence that attorneys will seek out Judge Gerard on particular cases that require a heightened degree of care and deliberation.

A problem of delay came before our court in *Carstensen,* 316 N.W.2d at 892–95. Judge Carstensen failed to comply with Rule 200 by omitting cases from required reports, and by reporting matters subsequent to the reports in which they should have been included. Further, he paid little or no heed to letters reminding him of his responsibility under Rule 200. He also ignored admonitions from the chief justice. We found that Judge Carstensen had "blatantly, flagrantly, and persistently disregarded the requirements of rule 200." *Id.* at 894. The gravity of the noncompliance warranted discipline of a thirty-day suspension without pay.

Although Judge Gerard had been admonished about his failure to timely file Rule 200 reports, he recognized the problem, sought and accomplished some improvement. As such, regardless of his shortcomings in this regard, we find that such actions do not violate Canon 1 requiring a judge to uphold the integrity and independence of the judiciary. Nor do his actions here rise to the level of "willful misconduct in office" under Iowa Code section 602.2106(3)(b).

However, we find that a disciplinary sanction is warranted by being supported by other charges. The commission found that Canon 3(A)(5) had been violated that requires a judge to perform the duties of the office impartially and diligently. We agree with the commission. Judge Gerard's actions regarding timeliness of decisions, failure to fully comply with Rule 200, and his continuation of quasi-judicial duties to the detriment of his work, especially in light of his receiving a prior admonition, is a flagrant and willful violation of Canon 3(A)(5). Judge Gerard's actions also violated section 602.2106(3)(b), as charged generally by the commission and as stated by that section, in that his acts constituted a persistent failure to perform judicial duties. We find these to be serious violations, which standing alone warrant significant disciplinary sanction.

## V. Sexual Misconduct

■ Our authority to review the judicial misconduct of Judge Gerard can be found in Iowa Code chapter 602. Specifically, we may

> [d]iscipline or remove the judicial officer for persistent failure to perform duties, habitual intemperance, willful misconduct in office, conduct which brings judicial office into disrepute, or substantial violation of the canons of judicial ethics.

Iowa Code § 602.2106(3)(b). The justification implicated here is conduct that brings disrepute to the judicial office. In order to determine if this justification for discipline has been met with regard to Judge Gerard's relationship with the assistant county attorney, we must also determine if Judge Gerard's actions violated the Iowa Code of Judicial Conduct.

We find the evidence from the record supports the following factual background. Judge Gerard had a sexual relationship with an assistant county attorney. This relationship remained secret for approximately two months. During this time, the assistant county attorney appeared before Judge Gerard on behalf of the State on a regular basis. Several intimate encounters were shared in various rooms of the courthouse where Judge Gerard presided. Both Judge Gerard and the assistant county attorney were married to other people. Upon discovery, Judge Gerard cooperated fully with the investigation and case reassignments. There is no evidence that Judge Gerard's relationship with the assistant county attorney prejudiced any defendant who appeared before him during this time.

Judge Gerard was charged with violating Canons 1, 2(A), and 3(D)(1)(c) of the Iowa Code of Judicial Conduct. The commission found him in violation of each canon as a result of his affair with the assistant county attorney. We agree. We do not come to such a conclusion lightly, however. We recognize that this was intended to be a private relationship between consenting adults. Although both were married to other people, we normally would be loath to interfere in such personal matters. In this case, however, the private aspects of the affair are secondary to the public problems it has created.

### A. Canons 1 and 2(A)

■ Canon 1 of the Iowa Code of Judicial Conduct states: "A judge should ... observe[ ] high standards of conduct so that the integrity and independence of the judiciary may be preserved." This canon imposes a duty upon a judge that rises above the normal responsibilities he has as an attorney. A judge is simply held to a higher standard of conduct by virtue of his office. This standard may make what the judge does in private a public concern because "judges have a special public responsibility as judicial officers." *In re Inquiry Concerning Eads*, 362 N.W.2d 541, 551 (Iowa 1985).

Similarly, Canon 2(A) of the Iowa Code of Judicial Conduct states: "A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Public confidence is a fragile thing. We have recognized that "public confidence in the judiciary is eroded by irresponsible or improper judicial conduct." *In re Eads*, 362 N.W.2d at 551. As such, we require judges to freely and willingly "accept restrictions on their conduct 'that might be viewed as burdensome by the ordinary citizen.' " *Id.* (citation omitted). We find that the sexual relationship between Judge Gerard and the assistant county attorney violated both canons.

In examining all circumstances of the conduct engaged in by Judge Gerard, we begin by considering the egregious nature of his actions. Because the affair occurred with a subordinate public servant, going undisclosed for several weeks, this raises several issues of bias, improper influence, and impartiality. Rather than disclose this relationship, Judge Gerard allowed it to remain hidden from all who appeared before him against the assistant county attorney. Judge Gerard decided that he was the best judge of what information defendants were entitled to know and withheld this information potentially to their detriment. Such a supercilious response is an offense to our rules of disclosure and recusal. This is a serious judicial infraction.

Under these circumstances, the integrity of this office suffered as well as the integrity of the judicial system. Judge Gerard's decisions were called into question, and his fitness was challenged. In addressing similar circumstances, the court in *In re Flanagan* stated:

> Although it may be difficult to assess the degree to which the public at large now may condone or disapprove of one having a sexual affair with a married person, we are persuaded that, in general, *such conduct is regarded as improper when it involves a subordinate in a professional, highly sensitive public context.* Moreover, we think it is fair to say that a member of the public, aware of the aforementioned combination of [facts], would reasonably conclude that the integrity of the judiciary was likely to be impaired.

*In re Flanagan,* 240 Conn. 157, 690 A.2d 865, 881 (1997) (emphasis added). We find this language to be persuasive. Accordingly, Judge Gerard's conduct had the opposite result strived for in Canon 1.

In regard to Canon 2(A), Judge Gerard adamantly argues that no one has been able to find any evidence that he acted partially toward the State and, therefore, this mitigates his misconduct. We cannot agree. It is immaterial that the judge's association may not have had a detrimental impact on defendants appearing before him. The key concern of this canon is the appearance of impropriety. In this situation, once the public learned of the judge's relationship with the State's attorney who appeared before him daily, the appearance of bias was very real.

We find the commission's analysis of Canon 2(A) to be very persuasive. The commission concluded:

> This behavior undermines the integrity of the judicial system. What is the public to think when they learn the assistant county attorney was having a sexual relationship with a judge before whom she appeared? What is the public to think when they learn the sexual conduct was taking place in the courthouse? *More importantly, what is a criminal defendant to think when the judge sentences that defendant or overrules that defendant's motion to suppress, when the assistant county attorney with whom he is having a sexual relationship was arguing the case on behalf of the State?*

(Emphasis added).

█ Other courts have addressed the effect judicial misconduct may have on public perception.

> Members of the judiciary should be acutely aware that any action they take, whether on or off the bench, must be measured against exacting standards of scrutiny to the end that public perception of the integrity of the judiciary will be preserved. There must also be a recognition that any actions undertaken in the public sphere reflect, whether de-

signedly or not, upon the prestige of the judiciary.... That is not to say, of course, that Judges must cloister themselves from the day-to-day problems of family and friends. But it does necessitate that Judges must assiduously avoid those contacts which might create even the appearance of impropriety.

*Lonschein v. State Comm'n on Judicial Conduct,* 50 N.Y.2d 569, 430 N.Y.S.2d 571, 408 N.E.2d 901, 902 (1980) (citation omitted). Moreover, "[t]he duty to avoid creating an appearance of impropriety is one of taking 'reasonable precautions' to avoid having 'a negative effect on the confidence of the thinking public in the administration of justice.'" *In re Inquiry Concerning a Judge,* 788 P.2d 716, 723 (Alaska 1990) (quoting *In re Bonin,* 375 Mass. 680, 378 N.E.2d 669, 682–83 (1978)). And finally,

[w]hile it is true that adultery is no longer a criminal offense, the mere fact that conduct is less than criminal does not mean that, if a judge engages in it, he may not diminish public confidence in the judiciary. A judge's conduct is held to a higher standard than that of the average citizen, and must be beyond reproach, at least *when that conduct is directly connected to his professional office and functions.*

*In re Flanagan,* 690 A.2d at 881 (emphasis added).

Our court has also had the opportunity to speak about this canon. We have noted specifically:

Judges must be particularly sensitive about their social relationships with lawyers. Although judges are not required to terminate friendships with lawyers, they must regulate their relationships to avoid even the appearance of impropriety. *Prudence dictates that judges be especially sensitive about their associations with attorneys who are likely to appear before them in the courtroom.*

*In re Eads,* 362 N.W.2d at 551 (emphasis added) (citation omitted).

 Judge Gerard was neither prudent nor forthcoming about his relationship with a lawyer who appeared before him daily. As such, this secret relationship, upon discovery, did contribute to diminished public confidence in our judicial system. *See In re Flanagan,* 690 A.2d at 881. The harm was compounded by the fact that it occurred in the public courthouse. This conduct was a serious misuse of the judge's privilege to work and serve there as a servant of the citizens of Iowa. It also demonstrated a lack of discretion by engaging in what was intended to be private conduct in a public place which, nevertheless, had the potential to become a public matter. "A judge's unethical or seemingly unethical behavior ... detracts from the efficient administration of justice and the integrity of the judicial office, as it diminishes respect for the judiciary in the eyes of the public." *In re Judge,* 788 P.2d at 722. Accordingly, Judge Gerard's actions violated Canon 2(A).

### B. Canon 3(D)(1)(c)

Canon 3(D)(1)(c) of the Iowa Code of Judicial Conduct states:

A judge should disqualify himself ... in a proceeding in which the judge's impartiality might reasonably be questioned ... [such as] where:

The judge knows that [he] ... has ... any ... interest that could be substantially affected by the outcome of the proceeding.

This canon places an affirmative duty on the judge to make himself aware of the consequences of his relationships and conduct. When circumstances are such in his life that someone might reasonably question his partiality in a particular matter, he has an obligation to make those conflicts

known or recuse himself. It was not Judge Gerard's right to make these decisions for the affected parties. We agree with the commission that "this paternalistic attitude on behalf of the judge is contrary to Iowa law." The failure to disclose his relationship with the assistant county attorney or recuse himself where appropriate was not only poor judgment, but suggests to the reasonable onlooker that Judge Gerard's impartiality was affected. Therefore, Canon 3(D)(1)(c) was violated.

### C. Section 602.2106(3)(b)

With due respect to Judge Gerard's past and future legal contributions, we cannot ignore the gravity of his actions and their effect on the legal community and public confidence. Given the violations of these three canons of judicial conduct, Judge Gerard has brought disrepute to his coveted office. We also find that his actions in this regard violate Iowa Code section 602.2106(3)(b).

Judge Gerard misused his power as a public servant. He also misused his access to the public courthouse. While in hindsight he can admit that he acted improperly, this is no buffer for the public erosion of confidence that resulted from Judge Gerard's indiscretions with the assistant county attorney. As such, we adopt the holding of the commission regarding Judge Gerard's failure to recuse himself from cases handled by the assistant county attorney with whom he was having a sexual affair. We also agree with the commission's findings on his misuse of the courthouse.

Because of these violations, there must be "public accountability of [Judge Gerard] for [his] disciplinary infractions." *In re Eads*, 362 N.W.2d at 551. The integrity of his office was diminished by his failure to recognize the seriousness of his actions. "The public must be protected, others must be deterred from similar misconduct, and confidence in the judiciary must be vindicated." *Id.* Our goal is "not to punish the wrongdoer but to restore public confidence in the system and its officers." *In re Miera*, 426 N.W.2d 850, 858 (Minn.1988).

### VI. Discipline

We have determined that the charges as found to be proved in this opinion justify the imposition of the sanction of suspension from judicial office. It is therefore ordered that Judge Stephen Gerard is suspended from his judicial office for a period of sixty days from July 9, 2001, without compensation, except fringe benefits.

**APPLICATION GRANTED; DISCIPLINE IMPOSED.**

All justices concur except NEUMAN and TERNUS, JJ., who take no part.