STATE of Iowa, Appellee,

v.

Robert Lewis SMITH, Appellant.

No. 58248.

Supreme Court of Iowa.

May 19, 1976.

Richard Poffenberger, Perry, for appellant.

Richard C. Turner, Atty. Gen., Earl W. Roberts, Jr., Asst. Atty. Gen., and Alan Shirley, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

RAWLINGS, Justice.

Charged with having committed murder in violation of Section 690.1, The Code 1973, defendant Robert Lewis Smith entered a guilty plea, was found guilty of murder in the second degree and accordingly sentenced. He appeals. We affirm.

After return of indictment by the Dallas County Grand Jury, Smith first pled not guilty and later moved for a change of venue. Judge Wifvat, at all times presiding, hereafter occasionally referred to as the judge, sustained defendant's motion and ordered the cause transferred to Guthrie District Court for trial.

Subsequently, Smith filed a suppression motion which was sustained in part, overruled in part.

Thereafter defendant withdrew his not guilty plea, entered a plea of guilty and the judge thereupon ordered a Code § 690.4 degree of culpability hearing be held. Prior to the time thus fixed, defendant filed a "Motion for Disqualification" of Judge Wifvat. This matter was duly heard by him and overruled.

The above noted culpability hearing was later held. The judge, as aforesaid, found defendant guilty of second degree murder and sentenced him to life imprisonment.

Reduced to bare essentials, these are the issues presented for review: (1) Did the judge err in overruling defendant's "disqualification motion"; (2) does the record support a finding of murder in the second degree; (3) is the life imprisonment sentence excessive?

I. By his "Motion for Disqualification" Smith sought to replace Judge Wifvat for the degree of guilt hearing. In support thereof defendant alleged, in substance, the judge (1) was acquainted with the murder victim, Richard Yager, and had patronized

his restaurant in Adel (Dallas County); (2) "participated in receiving" the guilty plea of a co-defendant, Ivyle Kimmel, heard statements by him and others regarding perpetration of the instant crime and thus became biased against defendant Smith; (3) presided during the hearing on Smith's pretrial suppression motion, then heard testimony by eight prosecution witnesses and was attendantly prejudiced against this defendant; (4) told defense counsel "the defendant may stand a better chance with a jury than with me"; and (5) accepted Smith's guilty plea at which time defendant, over objection by his attorney, was asked to tell how the offense had been committed.

By a lengthy order dictated into the record, and subsequent written supplement thereto, defendant's aforesaid motion was overruled. In support thereof the judge stated he (1) was not biased or prejudiced against defendant Smith; (2) never engaged in any social, personal or business relationship with decedent Yager; (3) had not patronized decedent's restaurant more than once each year from 1970 to 1974 and only occasionally prior thereto; (4) questioned co-defendant Kimmel as a prerequisite to acceptance of his guilty plea and such "generated no bias in this judge against defendant" Smith; (5) explained that by his statement to the effect defendant might fare better with a jury he meant "a jury could find defendant not guilty, while the court in a degree of guilt hearing following a plea of guilty to an open charge [of murder] would at least have to hold Defendant for manslaughter".

Mindful of the foregoing, we now allude to Chapter 778, The Code 1973.

Section 778.1 states:

"In all criminal cases which may be pending in any of the district courts, any defendant therein, or the state, in cases where defendant is charged with felony, may petition the court for a change of place of trial to another county."

Section 778.2 says:

"Such petition, when filed by the defendant, must set forth the nature of the prosecution, the court where the same is pending, and that such defendant cannot receive a fair and impartial trial *owing to the prejudice of the judge*, or to excitement or prejudice against the defendant in such county, and be verified on information and belief by the affidavit of the defendant." (emphasis supplied).

And § 778.9 provides: "The court, in the exercise of a sound discretion, must, when fully advised, decide the matter of the petition according to the very right of it." See also Iowa R.Civ.P. 167.

■ By virtue of § 778.2 quoted *supra*, it is to us apparent defendant's "disqualification motion" must be deemed a motion for change of venue. In any event, it is so entertained.

Further, with regard to bias, the Iowa Code of Judicial Conduct, adopted October 9, 1973, effective November 1, 1973, must be here considered. In relevant part, Canon 3 thereof declares:

"C. *Disqualification.*

"(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

"(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; * * *."

This means we are now, for the first time, called upon to determine applicability of Code § 778.2 "prejudice of the judge" in juxtaposition with Canon 3C(1)(a), quoted above.

■ II. Briefly stated, Canon 3C(1)(a), is basically a broad standard by which a judge should sua sponte determine the matter of self-recusation. Stated otherwise it, followed by specifics (interest and relationship), stands as a guiding precept upon which every judge, by an objective in-depth search of his or her own conscience, must decide whether a fair trial dictates he or she should make way for another judge to preside in a given justiciable controversy be

it civil, criminal or otherwise. Such recusation may be self-initiated, or triggered by the filing of a motion for change of venue predicated upon prejudice. In either event, as demonstrated *infra*, it is for the judge, under Code § 778.9 and Canon 3, Code of Judicial Conduct, both quoted *supra*, to initially determine whether a fair trial dictates recusation.

■ Noticeably, Canon 3, in its entirety, appropriately supplements Code § 778.2 by providing an objective standard or guideline upon which to also determine, in retrospect, whether a judge in a given instance should or should not have disqualified himself or herself.

Without question, bias or prejudice is the most difficult of the Canon 3 triad (bias, interest or relationship) to apply because it defies any exact basis of measurement.

■ Significantly, however, only personal bias or prejudice, as distinguished from judicial predilection, constitutes a disqualifying factor. See Canon 3C(1)(a), quoted above; *United States v. Beneke*, 449 F.2d 1259, 1260–1261 (8th Cir. 1971); *Lazofsky v. Sommerset Bus Co., Inc.*, 389 F.Supp. 1041, 1043 (E.D.N.Y.1975); *United States v. Mitchell*, 377 F.Supp. 1312, 1316–1317 (D.D.C.1974).

This means evidence presented in the trial of a prior cause, or definite views on the law, create no personal bias since they do not stem from an extrajudicial source. See *Antonello v. Wunsch*, 500 F.2d 1260, 1262 (10th Cir. 1974); *United States v. Mitchell*, 377 F.Supp. at 1318–1319; 46 Am.Jur.2d, Judges, § 167; 48 C.J.S. Judges § 82b.

In the same vein it has been appropriately said:

" '[A judge] must have neighbors, friends and acquaintances, business and social relations, and be a part of his day and generation. * * * the ordinary results of such associations and the impressions they create in the mind of the judge are not the "personal bias or prejudice" to which the statute refers.' " *Commonwealth of Pa. v. Local U. 542, Int. U. of*

*Op. Eng.*, 388 F.Supp. 155, 159 (E.D.Pa. 1974).

■ It is also understood the burden is upon an affiant to establish the basis for disqualification upon claimed personal bias by allegations of fact not conclusions or frivolous assertions. See *Deal v. Warner*, 369 F.Supp. 174, 177 (W.D.Mo.1973). See also *State v. Dague*, 206 N.W.2d 93, 95 (Iowa 1973).

■ Moreover, it is well settled in this jurisdiction, a judge confronted with a change of venue motion based upon his or her alleged bias may, in the exercise of sound discretion, resolve the issue, i. e., it need not be necessarily referred to an associate. As articulated in *State v. Miller*, 254 Iowa 545, 548, 117 N.W.2d 447, 450 (1962):

"When a trial judge must pass upon a motion for change of venue based on allegations of his own prejudice he must consult his own feelings, as well as other matters, and grant or deny the change, as he may think the right demands, in the exercise of a careful discretion. Abuse of discretion must appear before we will interfere."

And in *State v. Gibson*, 204 Iowa 1306, 1310, 214 N.W. 743, 745 (1927), this court said:

"The right to a change of judge is not one of absolute right. The judge is entitled to consult his own mind, and he, perhaps better than anyone else, knows whether or not he can give a defendant on trial before him a fair and impartial trial in every way. The high appreciation of judicial duties should prompt any judge to refrain from presiding at the trial of one charged with crime when he feels a consciousness that he cannot act in the matter with impartiality and without a feeling of prejudice."

See also *Deal v. Warner*, 369 F.Supp. at 176; 46 Am.Jur.2d, Judges, §§ 198–199; 48 C.J.S. Judges § 94d.

For comprehensive overviews of the subject discussed above see *Duplan Corporation v. Deering Milliken, Inc.*, 400 F.Supp. 497 (D.S.C.1975); *Deal v. Warner, supra*; 13 Wright, Miller & Cooper, Federal Practice

and Procedure: Jurisdiction, § 3541, et seq. (1975).

■ It is to us apparent defendant's instantly involved motion fails to reveal any basis upon which to find existence of disqualifying extrajudicial personal bias or prejudice by Judge Wifvat. Although we incline to the view he would have been better advised to recuse himself, it still remains no abuse of discretion attended his failure to do so.

Defendant's first assignment affords no basis for a reversal.

III. At close of the degree-of-culpability hearing Smith moved for a directed verdict of manslaughter. This motion was overruled and as previously stated trial court found defendant guilty of second degree murder.

In controverting such finding Smith contends the State failed to prove perpetration of second degree murder beyond a reasonable doubt and challenges sufficiency of the evidence to support a malice aforethought finding.

■ On this appeal the evidence is viewed in a light most favorable to the verdict reached by the trier of the fact. See *State v. Cruse*, 228 N.W.2d 28, 31 (Iowa 1975); *State v. Lass*, 228 N.W.2d 758, 767 (Iowa 1975); *State v. Nutter*, 248 Iowa 772, 778, 81 N.W.2d 20 (1957).

■ By application of the above standard, we are satisfied the record fairly reveals this underlying factual situation.

Defendant Smith and his associate Kimmel entered a combined gas station-restaurant, then operated by Mr. Yager, decedent. Smith first inquired as to location of the men's toilet and when told it was at the rear of the building he left, later went to Kimmel's pickup truck, took a revolver from the glove compartment, then reentered the gas station carrying the weapon in a raised position and admittedly fired the shot which caused Mr. Yager's death. An agent for the B.C.I. testified laboratory tests indicated decedent was eight to twelve inches away from the weapon when fired.

Mr. Lundstrom, a customer, testimonially stated he heard a shot and saw defendant run from the gas station area of the truck stop to Kimmel's pickup. When Lundstrom went to the gas station door defendant aimed the gun at him before entering the vehicle.

Another patron, Mr. Grady, testified to the same effect. This witness also stated that he, using his own truck, pursued Kimmel and defendant after they sped away from the shooting scene. When the escapees drove into a deadend farm lane, Grady endeavored to block their escape by parking his truck across the roadway. After Kimmel had turned around in order to effect an exit, a couple of shots were fired at Grady as the pickup operated by Kimmel swerved past the attempted blockade.

Although Kimmel did not testify in person, he stated, by deposition read into the record: "Mr. Smith came in with a gun in his hand in a raised position." His testimony further discloses he at that point fled and while so doing heard a shot. The gun belonged to Kimmel and Smith had removed it from Kimmel's truck without permission. During the "get-away" defendant tossed the weapon into a ditch. Although Smith had been drinking heavily that day Kimmel opined defendant was not drunk.

After having ineffectively moved for a manslaughter "directed verdict" defendant testified as to his version of the event. An examination of defendant Smith's testimony reveals without question he and Kimmel were in Adel for the purpose of "casing" the town for a likely business establishment into which they could break and enter. As to the shooting, defendant admitted firing the fatal shot but took the position it was accidental. In essence, Smith maintained (1) the gun was carried by him into the gas station for the sole purpose of attempting to sell it to Mr. Yager; (2) he did not realize it might be loaded until entry into the station; (3) the weapon was then raised only to check the cylinder for bullets and he slightly pulled the trigger in order to get the cylinder to revolve; and (4) at that moment Mr. Yager, then at the desk,

turned around and upon seeing the raised pistol struck defendant's arm thereby causing the weapon to discharge. Defendant said he fled only because of a panic impulse and denied aiming the gun at restaurant patrons.

 Without question, credibility and weight to be accorded the testimony of each witness, including defendant, rested with Judge Wifvat as trier of the fact. See *State v. Hall*, 214 N.W.2d 205, 210 (Iowa 1974); 4 Jones on Evidence, § 29:9 (Gard. 6th ed. 1972); cf. *State v. Monaco*, 230 N.W.2d 485, 487 (1975).

 Unquestionably, second degree murder may be established by requisite evidence disclosing the accused committed the unlawful killing of another with malice aforethought. See Code § 690.3.

 By way of exclusion proof of specific intent to kill is not required. See *State v. Drosos*, 253 Iowa 1152, 1164, 114 N.W.2d 526 (1962); *State v. Leedom*, 247 Iowa 911, 916, 76 N.W.2d 773 (1956).

 Additionally, malice aforethought is not to be equated with specific intent to kill. As we said in *State v. Schatterman*, 171 N.W.2d 890, 893 (Iowa 1969):

" 'While malice aforethought is the specific state of mind necessary to convict of murder, it is far different from the specific intent which is a necessary element of murder in the first degree. It may be express or implied from the acts and conduct of defendant.' "

 Also, malice aforethought may be inferred from defendant's use of a pistol or revolver, i. e., a deadly weapon. See *State v. McCollom*, 260 Iowa 977, 988, 151 N.W.2d 519 (1967).

 And motive for a killing is not a necessary element of murder in the second degree. If, however, no motive is shown, such may be considered in determining whether an assailant acted with malice aforethought. See *State v. McNamara*, 252 Iowa 19, 25, 104 N.W.2d 568 (1960).

 Finally, evidence of an assailant's flight after the crime, and related conduct, may be considered circumstantial evidence of guilt hence the fact of guilt itself. See *State v. Wimbush*, 260 Iowa 1262, 1267–1268, 150 N.W.2d 653 (1967). See also *State v. Thrasher*, 175 N.W.2d 397, 402 (Iowa 1970); McCormick, Evidence, § 271 at 655–656 (2d ed. 1972).

In brief, the degree of culpability hearing evidence, viewed in the light most favorable to the prosecution, discloses, (1) Smith and Kimmel were in Adel at the time here concerned for an illegal purpose; (2) defendant carried a lethal weapon into the premises occupied by Mr. Yager and fired the shot which caused his death; (3) defendant and his associate fled the scene of the shooting; and (4) while attempting the escape-related flight two shots were fired in the direction of Mr. Grady, a pursuer.

Bearing in mind the applicable legal principles above set forth, we are persuaded the foregoing evidence sufficed as a basis upon which Judge Wifvat could rationally find defendant guilty of murder in the second degree. Stated otherwise, it cannot be said a reasonable doubt existed as a matter of law regarding defendant's guilt in the degree of culpability found and determined as aforesaid.

Further discussion on this issue is not necessary. The instant assignment is without merit.

 IV. Upon finding defendant guilty of second degree murder trial court could properly exercise sound discretion as to the attendant sentence. See *State v. Hunter*, 243 Iowa 361, 366, 51 N.W.2d 409 (1952). And Code § 690.3 says, in effect, ten years to life imprisonment may be imposed.

Pursuing the subject further, Code § 793.-18 authorizes this court, on appeal, to "affirm, reverse, or modify the judgment, or render such judgment as the district court should have done, or order a new trial, or reduce the punishment, but cannot increase it." That statutory concept was recently addressed by us in *State v. Warner*, 229 N.W.2d 776, 782–783 (Iowa 1975). In sum-

mary, this court has consistently held the severity of punishment must be "carefully considered" but when it does not exceed the statutory maximum we will interfere only where abuse of discretion is shown. See also *State v. Swanson*, 228 N.W.2d 101, 105 (Iowa 1975).

Apparently defendant had never before been convicted of a violent crime, but he did have a prior criminal record. On the other hand, the county attorney recommended a 50 year sentence. See *State v. Dittmar*, 239 N.W.2d 545, 547 (Iowa 1976).

In sentencing defendant Judge Wifvat aptly stated:

"The Court considers the interests of society as well as the interests of the Defendant. The Court has considered all the circumstances relating to the crime itself, its happening, your involvement, Mr. Smith. The Court finds that this was a senseless act. The Court in its sentence, having found you guilty on your plea, the Court sentences you now to the Iowa State Men's Penitentiary at Fort Madison for life."

While such term of imprisonment "seems quite severe * * * we cannot say there was an abuse of discretion." *State v. Johnson*, 196 N.W.2d 563, 571 (Iowa 1972).

Actually, this is one of those tragic cases where little or nothing has been or can be said in mitigation of the irrational and violent crime here involved.

The sentence imposed must stand.

AFFIRMED.