**In the Matter of the INQUIRY CONCERNING George L. STIGLER, District Court Judge,**

**George L. Stigler, Respondent.**

**No. 99–1449.**

Supreme Court of Iowa.

March 22, 2000.

Mark McCormick of Belin Lamson McCormick Zumbach Flynn, A P.C., Des Moines, for respondent.

Thomas J. Miller, Attorney General, and Richard A. Williams, Assistant Attorney General, for the commission.

CARTER, Justice.

This is a consideration by this court of an application of the Commission on Judicial Qualifications (the commission) filed pursuant to Iowa Code section 602.2104(2) (1997) requesting that the court discipline Judge George L. Stigler. That application followed a hearing before the commission at which evidence was received on specific charges of misconduct and findings by the commission with respect to that evidence. Judge Stigler has responded resisting the commission's application. We review the commission's application as in equitable proceedings pursuant to Iowa Code section 602.2106(1).

The initial complaint to the commission concerning Judge Stigler's conduct was by way of a letter from attorney Douglas Coonrad. The crux of his allegations pertained to Judge Stigler's actions in scheduling a hearing to set aside a temporary injunction that another judge had issued and proceeding to hold that hearing while counsel of record for one of the parties was engaged in the trial of a previously scheduled matter in the same courthouse. The commission's investigation of that complaint led to the filing of formal charges by the attorney general.

The facts developed by the rather extensive testimony presented at the hearing include the following. The hearing that prompted the complaint occurred on July 23, 1998. Six days earlier on July 17, attorney Coonrad had filed a petition in the Iowa District Court for Black Hawk County seeking a dissolution of the marriage of his client, Brock Staley. On that same date, attorney Coonrad presented to Judge Jon Fister an application for a temporary injunction. That application alleged that Brock Staley's wife, Angela, had left the parties' place of residence and taken the children with her to an undisclosed location. It sought an order requiring her to return the children to the family home. Pursuant to this application, Judge Fister issued a temporary injunction without notice or hearing requiring Angela to return the children to the family home.

The sheriff was unable to locate Angela for service of the injunction papers. She was at that time concealing herself in a battered women's shelter after an incident in which she alleges she had been forcibly dragged from the family home by Brock. After learning of the pending legal proceedings from her mother, Angela went to the sheriff's office on July 22 and accepted service of the original notice and order for injunction. That same day Angela retained attorney Jay Roberts, who immediately went to the Black Hawk County Courthouse seeking to have the injunction

quashed. Attorney Roberts first sought out Judge Fister but was unable to contact him. He next sought out the judge assigned to handle routine motions and orders, who was also unavailable. Upon discovering that Judge Stigler was free, he approached him concerning Judge Fister's order and advised that he intended to challenge it. He impressed on Judge Stigler that there was some urgency in setting a hearing on Mr. Staley's factual allegations.

Upon hearing Roberts' plea, Judge Stigler immediately contacted attorney Coonrad by telephone. He advised him that he was setting a hearing for 11 a.m. on the following morning on attorney Roberts' oral request to set aside the temporary injunction. Coonrad responded that he had a trial set the following morning at 9 a.m. for which he had to prepare and thus could neither prepare for nor attend an 11 a.m. hearing as proposed by Judge Stigler. The judge's response to Coonrad was that he would also be the judge presiding at Coonrad's scheduled trial. He advised him that at 11 a.m. he would recess that proceeding in order to hear evidence in the injunction matter. That apparently satisfied attorney Coonrad, who advised his client and certain witnesses for his client to be present for an 11 a.m. hearing on July 23. After spending considerable time on July 22 preparing for his regularly scheduled trial, Coonrad met with Brock Staley and his witnesses during the late evening hours so as to prepare them for the 11 a.m. hearing the following day.

Shortly prior to attorney Coonrad's 9 a.m. trial on July 23, Judge Stigler discovered that a relative of his was to be a witness in that case. He immediately arranged for Judge Thomas Bower to substitute for him as the judge in Coonrad's trial and, in turn, arranged to try a marriage dissolution case assigned to Judge Bower that same morning.

Attorney Coonrad's trial before Judge Bower commenced at 9:20 a.m. The marriage-dissolution case that Judge Stigler had acquired settled prior to the commencement of trial. Judge Bower's trial continued until 3:40 p.m. During a very brief noon recess, attorney Coonrad spoke to Judge Stigler, who had been waiting since 11 a.m. to proceed with the hearing on the injunction matter. He told the judge that he believed his trial would wrap up shortly. When that had not occurred by 12:50 p.m., Judge Stigler convened the hearing on the injunction matter in attorney Coonrad's absence. Attorney Roberts presented his evidence, and Brock Staley, acting as his own attorney, made a very unprofessional and ineffective cross-examination.

Attorney Roberts' evidence included testimony from Angela that her leaving the family home was the result of Brock physically dragging her out the door and closing it behind her. She testified that in the process she received abrasions on her body. At the conclusion of the evidence offered by attorney Roberts, Judge Stigler asked Brock Staley to take the stand and proceeded to interrogate him from the bench with leading questions concerning this physical ejection of Angela from the family home. These questions produced admissions from Brock with respect to Angela's allegations of physical abuse.

When attorney Coonrad's trial concluded at 3:40 p.m., he went immediately to the court room where the injunction hearing was scheduled to take place and learned that the hearing had been completed. The next day Judge Stigler vacated Judge Fister's order for a temporary injunction. In addition, he entered an order that (1) placed the temporary custody of the children jointly with the parties, (2) granted physical placement of the children to Angela, (3) set a specific schedule of times when Brock could visit the children, and (4) ordered Brock to make child support payments to the clerk of court.

Before filing his initial complaint with the commission, attorney Coonrad wrote to Judge Stigler expressing his dissatisfaction with the judge's actions. This letter expressed the view that the judicial system (as represented by Judge Stigler) had

been uncaring in protecting his client's rights and also suggested that Judge Stigler had "ditched" the case that had been transferred to Judge Bower and had "railroaded" Coonrad's client into a hearing at which his lawyer was not present. Attorney Coonrad requested that Judge Stigler arrange with his court reporter to provide him with a free transcript of the hearing so that he could take appropriate action to protect his client's rights. Judge Stigler considered this letter to be offensive and disrespectful and advised attorney Coonrad of that fact. Coonrad then wrote the judge another letter retracting his prior allegation concerning an uncaring judiciary. He also retracted the statements that the judge had ditched the 9 a.m. trial and had railroaded his client. He refused to retract the substance of the communication that objected to Judge Stigler's actions in proceeding with the hearing in his absence. On August 21 he filed a complaint with the commission with respect to Judge Stigler's handling of the Staley hearing.

On October 20, 1998, the commission wrote Judge Stigler advising him of attorney Coonrad's complaint. The commission's letter stated that it was investigating allegations that Judge Stigler had improperly interjected himself into the scheduling of the Staley matter rather than following regular scheduling procedures, had conducted a hearing without counsel of record who was known to be engaged in another trial in the same courthouse, and had engaged in inappropriate ex parte communications with attorney Roberts.

The letter further advised Judge Stigler that "[i]t is further alleged you may have exhibited racial or ethnic bias during the hearing." The latter allegation was the result of an unfortunate set of circumstances that understandably produced bad feelings on Judge Stigler's part. During the July 23 hearing conducted in attorney Coonrad's absence, the judge inquired with respect to whether Brock Staley was of Mexican ancestry. That inquiry was not improper because it was material to a specific issue that had come up in the case.

Nevertheless, Mr. Staley took offense to the question.

Attorney Coonrad, who was unaware of the context in which the inquiry was made, commented on Mr. Staley's displeasure with the ancestry question in his letter of complaint to the commission. Later, when Coonrad had an opportunity to review a transcript of the July 23 hearing, he discovered that there was a legitimate reason for the judge's question and immediately advised the commission of that fact. Unfortunately, the racial-bias allegation had already been passed on to Judge Stigler in the commission's communication of October 20. To aggravate the situation further, on November 23 an assistant Iowa attorney general investigating the complaint came to Judge Stigler's chambers and quizzed him about the comment concerning Mr. Staley's ancestry.

Later on November 23, attorney Coonrad appeared before Judge Stigler for a routine order. He was advised at that time that the judge did not wish to handle any matters in which Coonrad was involved. Coonrad testified at the hearing that the judge was very angry when he made this communication. In his testimony, Judge Stigler agreed that he had made such a statement to Coonrad but denied that he had made an angry display. His testimony on this point was corroborated by another witness who was present at the time. The judge conceded, however, that, at least on that day, his attitude toward attorney Coonrad was resentful as a result of the racial-bias allegation.

Notwithstanding his pronouncement to attorney Coonrad on November 23, Judge Stigler, when serving as motion judge on December 7, considered an application of attorney Roberts for an allowance of attorney fees in the Staley dissolution matter. Attorney Coonrad had previously filed a resistance to that claim. Judge Stigler granted attorney Roberts' request, although in a substantially reduced amount. Attorney Coonrad promptly filed a supplemental complaint with the commission con-

cerning Judge Stigler's action on the attorney-fee ruling, and the commission has made this matter one of the formal ethical violations lodged against Judge Stigler. In yet another follow-up to his complaint, attorney Coonrad wrote the commission, taking offense with Judge Stigler's appearance as a witness at Brock Staley's criminal trial on a charge of domestic-abuse assault based in part on the circumstances testified to at the July 23 injunction hearing. Although this matter was mentioned in the cross-examination of Judge Stigler, it was never made the basis of an ethical charge. In reviewing the record on this matter, we find nothing wrong with the circumstances under which Judge Stigler appeared as a witness at this trial other than the circumstances under which his evidence had been obtained.

In March 1999 the commission filed formal charges against Judge Stigler. By this time it had rejected taking action on Coonrad's claims that the judge had engaged in an improper ex parte communication with attorney Roberts and had deviated from the regular scheduling system. We agree that the record provides no basis for these charges.

The charges that were filed asserted that the judge was guilty of violating the canons of judicial conduct in (1) proceeding with the July 23 injunction hearing (referred to by the commission as a custody hearing), (2) questioning Brock Staley at that hearing in a manner calculated to incriminate him, (3) ruling on the attorney-fee application in the Staley case after being advised of the pending complaint against him by attorney Coonrad. Another charge made but eventually not pursued by the commission was an allegation that Judge Stigler had improperly maintained control over the court file in the Staley case following the July 23 hearing. Evidence produced at the hearing shows that the latter claim was without merit.

The commission scheduled a hearing on its formal complaint to take place on May 12, 1999. On April 14 Judge Stigler requested that the commission provide for his inspection all letters of complaint and supportive documents that attorney Coonrad had filed with the commission. When the hearing date was approaching and he had not yet received a ruling from the commission, Judge Stigler caused to be prepared and served on attorney Coonrad a subpoena issued by the clerk of the Iowa District Court for Black Hawk County that required Coonrad to produce the documents being sought from the commission at Judge Stigler's chambers in the courthouse. By the time the subpoena was served, the commission had denied the judge's request for production of these documents, although the judge had not yet been advised of that fact. Upon being served with the subpoena, Coonrad contacted the assistant attorney general advising the commission who told him to comply with the subpoena. Later, however, the commission amended its formal statement of charges to include a claim that Judge Stigler acted contrary to the canons of judicial conduct in seeking to challenge the commission's authority with respect to the production of these documents.

The hearing before the commission was ultimately continued until August 24, 1999, and the prior hearing date was used for a prehearing conference. Prior to the May 12 prehearing conference, Judge Stigler filed a motion to recuse the chairman of the commission on the ground that the chairman's law firm had been a defendant in a legal malpractice action in which Judge Stigler had made certain rulings adverse to that firm. Without explanation, Judge Stigler formally withdrew that motion at the conclusion of the prehearing conference. On the morning that the August 24 hearing commenced, Judge Stigler sought to reinstate his motion to recuse the chairman of the commission from participating in the hearing. The judge offered telephonic testimony of the plaintiff's lawyer in the legal malpractice case involving the chairman's firm. This testimony indicated that members of the firm other than the chairman (who had played a mini-

mal role in the litigation) had been quite upset by some of the judge's legal rulings. The motion to recuse was summarily denied. Also denied were a request by Judge Stigler for production of the attorney general's recommendations to the commission and a request that the hearing be made open to the public.

A considerable amount of testimony was presented at the hearing by both the attorney general and by Judge Stigler, who represented himself. We find that the evidence presented established the facts and circumstances that we have previously related in this opinion. Certain additional facts developed by the evidence will be discussed in connection with our consideration of the commission's recommendation.

## I. *The Commission's Findings and Recommendation.*

With respect to the specific ethical violations that it had made against Judge Stigler, the commission found that his conduct in holding the July 23 hearing in the absence of Brock Staley's lawyer and in eliciting admissions of domestic abuse from Mr. Staley by questions from the bench was in violation of Canon 3(A)(4) of the Iowa Code of Judicial Conduct. The commission concluded that the conduct also offended against Canons 1 and 2 of that code.

The commission further found that Judge Stigler's actions in considering the application for attorney fees in the Staley dissolution case shortly after he had exhibited displeasure with attorney Coonrad and announced the intention not to hear matters in which he was involved was a violation of the disqualification requirements contained in Canon 3(D)(1) of the Iowa Code of Judicial Conduct.

The commission also found that Judge Stigler's use of a district court subpoena to obtain documents that were the subject of a pending motion to produce before the commission was an act deliberately calculated to circumvent the commission's authority and thus was a ground for discipline. In addition to its findings on the

formal charges that it had levied, the commission concluded that Judge Stigler's conduct while appearing before the commission was disrespectful. Based on the ethical violations that it found to have occurred, the commission recommended that this court reprimand Judge Stigler for his conduct. The judge has filed a response urging that no discipline is warranted.

## II. *Procedural Matters.*

Prior to discussing the commission's findings and recommendation and Judge Stigler's response, we must consider certain procedural issues.

■ A. *Scope of review and burden of proof.* The applicable statute provides that this court consider these proceedings as in equity cases and render an appropriate decision. Iowa Code § 602.2106(1); *see In re Carstensen,* 316 N.W.2d 889, 892 (Iowa 1982) (supreme court evaluates the evidence independently and will substitute its judgment for that of the commission when appropriate). Although we have not previously addressed the question of burden of proof in our prior cases involving commission proceedings, we deem the proper burden of proof for establishing ethical violations to be a convincing preponderance of the evidence.

■ B. *Right to a public hearing.* Judge Stigler suggests that the denial of his request for a public hearing in this matter was contrary to law and violative of his rights under the Sixth and Fourteenth Amendments to the Federal Constitution. We disagree. The language of Iowa Code section 602.2103 provides that all hearings of the commission are confidential. Although Judge Stigler likens the situation to that involving Grievance Commission hearings in lawyer discipline cases, rules of this court in those matters expressly offer an attorney the opportunity to request a public hearing. There is no authority to grant that type of accommodation under the statute governing the procedure before the Judicial Qualifications Commission.

*See* Iowa Code § 602.2103. We conclude that the right to a public hearing conferred by the Sixth Amendment to the Federal Constitution is by its own terms applicable only in criminal proceedings. With respect to the Fourteenth Amendment due process claim, Judge Stigler has failed to establish how a closed hearing served in any way to deny him due process of law.

■ C. *Motion to disqualify.* Judge Stigler complains to this court concerning the refusal of the chairman of the commission to recuse himself as a result of the request that was made on the morning of the hearing. We believe that the judge's actions in withdrawing his initial request for recusal was a waiver of that application and that his attempt to reinstate it on the morning of the hearing was untimely.

■ D. *Conduct of hearing.* Judge Stigler urges that the chairman of the commission showed animosity to him, which was exhibited by his interrupting an offer of proof and refusing Judge Stigler the opportunity to make opening and closing statements. We are unable to agree with these contentions based on our review of the hearing record. The chairman's interruption of Judge Stigler's presentation of a so-called offer of proof was based upon his belief that the leading nature of the questions propounded were distorting the record. The judge does not identify any specific relevant information that he wished to include in the record that was excluded therefrom. There is no basis for a finding of prejudice on this claim. The commission's actions in establishing a hearing procedure that did not include opening or closing statements was well within its authority. Contrary to Judge Stigler's claims, we do not detect any animus toward the judge in the chairman's rulings. Those rulings, although at times abrupt, were in no way discourteous.

■ E. *Discovery.* Judge Stigler contends that he was denied a fair hearing because the commission refused his request for discovery. The actions of the commission in this regard were premised on its belief that section 602.2103 and rule 5 of the rules of the commission specify that all documents coming into the commission's possession are confidential. A literal reading of the statute and rule would support that contention. To accept it, however, would be to foster a hearing procedure in which an accused judicial officer could be unfairly blindsided. If the commission's interpretation of the statute were strictly adhered to, it would not be able to advise the subject of investigation that a complaint had been filed by a particular individual or the nature of that complaint. Obviously, the commission does not adhere to that practice.

■ We view the provisions for confidentiality in section 602.2103 and commission rule 5 as referring to the right of the general public to obtain information in the commission's possession. The statute and rule should not be interpreted to deprive the judge of necessary discovery for purposes of preparing for a hearing on the charges. It may be desirable during the investigative stage not to reveal information furnished by the complainant or otherwise gathered by the commission. But, after the filing of specific charges by the commission, the judicial officer whose conduct is under inquiry should be given the same right of discovery as that enjoyed by the members of other professions who face charges of misconduct before duly constituted boards or agencies. *See* Ct. R. 118.6 (contemplates discovery by both the complainant and respondent in attorney disciplinary proceedings); Iowa Code § 272C.6(4) (recognizes right of other professional licensees to discovery in disciplinary proceedings).

We believe that the statements of complaint from attorney Coonrad and any documentation submitted by him should have been made available to Judge Stigler on request at any time after the filing of formal allegations of misconduct. We agree with the commission, however, that the recommendations of the assistant attorney general to the commission were

privileged and not subject to a motion to produce.

Any failure to allow discovery in the present case did not prejudice Judge Stigler. All of the charges against him were set forth in detailed and precise allegations of events in which he was personally involved.

### III. *Discussion of the Commission's Charges and Judge Stigler's Response Thereto.*

■ A. *Matters involving the Staley hearing.* When appearing before the commission, Judge Stigler sought to justify the manner in which he handled the Staley hearing by urging that the ends justified the means. He attributed his zeal in moving so swiftly and precipitously in this matter to the fact that he viewed Judge Fister's order as having been improvidently granted and believed that it placed Angela Staley in imminent danger of arrest. He urged to the commission that because of this court's admonition in *Iowa Supreme Court Board of Professional Ethics & Conduct v. Lesyshen,* 585 N.W.2d 281, 288 (Iowa 1998), an improper ex parte order is ordinarily not to be overturned by a subsequent ex parte order. Consequently, in his view, what he could not do by a stroke of the pen had to be accomplished by an expedited hearing process.

Although we view it as a slipshod practice not to require that applications to the court for relief be filed in writing, Judge Stigler did not act improperly in setting a hearing on attorney Roberts' oral challenge to the temporary injunction. Judge Fister's order for temporary injunction carried structured custody arrangements, albeit as part of the requirement for returning the children. We recognized in our *Lesyshen* decision that when ex parte custody orders are challenged "the judge should . . . set the matter down for immediate hearing" on notice to the affected parties. *Lesyshen,* 585 N.W.2d at 288. Like the commission, however, we are unable to conclude that Judge Stigler was faced with an exigency that compelled him to deny Mr. Staley the opportunity to have his counsel present for an important hearing.

The fact that Judge Stigler did not start the hearing at its scheduled 11 a.m. hour is indicative of his recognition of the need to wait for attorney Coonrad's trial to finish. He himself had assured Coonrad that he would coordinate the Staley hearing with Coonrad's regularly scheduled trial. What occurred was that Judge Stigler simply tired of waiting for Judge Bower's trial to be completed. Before the commission, he attempted to blame what happened on Judge Bower for failing to recess his hearing in order that Judge Stigler could proceed with the Staley matter. At one place in his testimony, he accused Judge Bower of deliberately running his case long so as to spite Judge Stigler.

We find nothing in the record to suggest that Judge Bower should not have gone forward with his regularly scheduled trial. It involved a matter that had been on file for some time. At issue was the title to the home of an elderly woman, and the result was of considerable importance to the parties. The case needed to be heard and disposed of. Of disturbing significance is the fact that Judge Stigler never communicated with Judge Bower about his perceived exigency in the Staley matter.

We also disagree with Judge Stigler's contention to the commission that attorney Coonrad was remiss in not imparting to Judge Bower his need to temporarily leave the trial and proceed with the hearing in the Staley matter. Coonrad's allegiance under the circumstances was properly directed to his client in the regularly scheduled proceeding. He was entitled to rely on Judge Stigler's assurance that the scheduling of the Staley hearing would be coordinated with his other trial. Judge Stigler's zeal to overturn Judge Fister's order was unbecoming of a judicial officer. It seems clear that from the moment attorney Roberts spoke to him on July 22 that order was destined not to survive the following day.

Judge Stigler's action in proceeding with the Staley hearing in attorney Coonrad's absence was aggravated by two additional circumstances. First, rather than simply rescind the temporary injunction, which would have been the only action required to stave off his perceived emergency concerning Angela's imminent arrest, he proceeded to also adjudicate custody, visitation, and child support for the pendency of the dissolution action, even though there was no request on file that he do so. Iowa Code section 598.11 gives a district judge authority to take such action on the judge's own initiative but only on five days notice to the other party.

Second, Judge Stigler acted in callous disregard of Brock Staley's rights by calling him to the stand and, through leading questions, obtaining admissions of domestic abuse. No argument based on the ends justifying the means can support that action. It was a blatant denial of Mr. Staley's rights. We agree with the commission that Judge Stigler's conduct in connection with the July 23, 1998 hearing was a violation of Canons 3(A)(4) of the Iowa Code of Judicial Conduct ("a judge should accord to every person who is legally interested in a proceeding, or that person's lawyer, full right to be heard"). This type of conduct was also sufficiently destructive of public confidence in the judiciary to be a violation of Canon 2(A), which requires a judge to promote such confidence.

■ *B. The recusal issue.* Concerning the commission's findings that he improperly failed to recuse himself from ruling on the temporary attorney-fee application in the Staley case, Judge Stigler urges that a judge should not be subject to discipline for a judgment against recusal simply because the judgment is determined to be wrong.

We discussed a judge's duty to recuse sua sponte in *State v. Smith,* 242 N.W.2d 320 (Iowa 1976). Our comments were as follows:

> Briefly stated, Canon 3(C)(1)(a) [currently 3(D)(1)(a) ] is basically a broad standard by which a judge should *sua* *sponte* determine the matter of self-recusation. Stated otherwise it, followed by specifics (interest and relationship), stands as a guiding precept upon which every judge, by an objective in-depth search of his or her own conscience, must decide whether a fair trial dictates he or she should make way for another judge to preside in a given justiciable controversy be it civil, criminal or otherwise.

*Smith,* 242 N.W.2d at 323–24.

Canon 3(D)(1) is both general and specific. It provides that "a judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." It then proceeds to set forth examples (a) through (d) of situations that warrant disqualification. Example (a), which is the provision deemed pertinent here, provides for recusal in instances in which

> [t]he judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

Judge Stigler points out that the language refers to bias concerning a party and asserts that he bore no malice against Brock Staley. Although the disqualification rule, as drafted, does not expressly refer to bias against a party's attorney, we believe that protection against that type of bias is implicit in what the rule seeks to accomplish. In any event, it is clear, as we recognized in our *Smith* decision, that the introductory phrase referring to any situation in which the judge's impartiality might reasonably be questioned sets forth an objective standard for sua sponte disqualification. We believe that standard was violated when the judge ruled on the attorney-fee application in the Staley case. Even if Judge Stigler believed that he could be impartial (and we accept his statement that he did so believe), this impartiality could nonetheless be reasonably questioned by an impartial observer. If he had not previously announced a bias toward attorney Coonrad on November

23, his ruling on December 7 might be excused as a mere error of judgment. His prior acknowledgment of bias makes it much more serious. We agree with the commission that this action was a violation of Canon 3(D).

■ *C. The act of subpoenaing Coonrad's letters to the commission.* In response to the commission's finding on his action in subpoenaing attorney Coonrad's copies of his letters to the commission, Judge Stigler contends that he was unaware that the provisions of Iowa Code section 602.2104(3) confer the power to control the issuance of subpoenas in commission proceedings on the commission. He points to the provisions of commission rule 14(b) that provide the conduct of the hearing and the presentation of evidence "shall conform to the Iowa Rules of Civil Procedure." He asserts his belief that this reference incorporated the rules on subpoena issuance by the district court clerk.

The claim against Judge Stigler for misusing a subpoena does not turn on who had authority to issue the subpoena although that is involved. The charge condemns the use of a subpoena to usurp the power of the commission in ruling on a discovery request for the production of documents. Judge Stigler's subpoena subverted the commission's authority in this regard by requiring the delivery to his chambers of the very documents being sought from the commission in a discovery motion. We agree with the commission that this was an act of misconduct on his part. Because he was a member of the judiciary and misused a judicial process, this transaction placed the judiciary in an unfavorable light. Such conduct was a violation of Canon 2(A).

■ *D. The judge's conduct before the commission.* As we have previously noted, the commission, in addition to making findings on its specific charges of misconduct, expressed the view that Judge Stigler's conduct before the commission was disrespectful. As to some matters on which the commission was critical of Judge Stigler's conduct, we believe that it applied an incorrect standard. A judge who is acting as his own attorney in an adversary proceeding is not required to exhibit the same demeanor as a judge presiding at a judicial hearing. He is entitled to the same latitude in zealously presenting his case as would an attorney representing a judge in this type of proceeding. Similarly, if the action of another judge is placed in issue as a result of the respondent judge's theory of defense, a pro se judge advocate is entitled to ask hard questions when examining that judge as a witness.

With respect to the commission's finding of Judge Stigler's showing disrespect toward the commission chairman, we find that the judge's remarks were inexcusably insulting. Judge Stigler had attempted to place in evidence the opinion of one of the lawyers involved in the *Lesyshen* case concerning the application of that decision to the issues before the commission. The chairman refused to allow this testimony on the basis that it was an opinion concerning issues of law. Judge Stigler asked to make an offer of proof. The chairman granted that right but ruled that it should be dictated into the record at the conclusion of the hearing. At this point, Judge Stigler responded:

> All along here, Mr. Elderkin, you have repeatedly violated the rules. There is no provision for a judge to make a ruling on admissions of evidence in an equity matter. The rules are quite clear that all evidence comes in in an equity matter, subject to the objection. The trial judge does not say overruled, sustained or anything like that and for the last two days you have been doing that repeatedly. You have sustained, you have sustained, you have sustained, and everything that the State has done you have permitted the State to get away with; everything that I have done or a good number of things that I have done you have roundly criticized and you have joined in with the prosecutors to deny me basic fundamental rights.

We agree with the commission's finding that the manner in which this rejoinder

was made was improper and disrespectful of the authority of the commission's chairman. It was a violation of Canon 1 of the Iowa Code of Judicial Conduct, which requires high standards of personal conduct.

IV. *Appropriate Discipline.*

We have recognized that

[i]n determining an appropriate discipline in cases of judicial misconduct, our primary concern is to provide sanctions sufficient to restore and maintain the dignity and honor of the judicial office

. . . .

*In re Harned*, 357 N.W.2d 300, 302 (Iowa 1984). In adhering to this principle, we believe that each case must be carefully evaluated as to the particular transgressions that occurred. One writer in this area cautions against imposing discipline for overreacting to difficult situations. He contends that "the motive of the judge may always be considered—is he or she acting in good faith." Steven Lubet, *Judicial Discipline & Judicial Independence,* Law & Contemp. Probs., Summer 1998, at 59, 73. The same writer adds, however,

[a] ... distinguishing criterion might be called something like the "egregiousness quotient" of the error. Serious misrulings are obviously more likely to amount to misconduct, though such a standard is admittedly inexact. There seems to be some agreement, however, that legal error becomes serious enough to warrant discipline when judges deny individuals their basic or fundamental procedural rights.

*Id.*

We are convinced that the conduct of Judge Stigler that we have condemned was not undertaken to foster his personal well-being nor was it the result of a malicious attitude toward anyone. It was an unfortunate deviation from his normal way of doing things. Judge Stigler has enjoyed throughout his twenty-two-year judicial career the reputation of a conscientious and diligent judge. Notwithstanding these considerations, we agree with the commission's determination that the violations of the Iowa Code of Judicial Conduct that we have found to exist were sufficiently serious to warrant discipline in the form of a reprimand. Consequently, we reprimand Judge Stigler.

**JUDICIAL OFFICER REPRIMANDED.**

All justices concur except LARSON, J., who concurs in result, and LAVORATO, J., who takes no part.