639 N.W.2d 12 (2002)
In the Matter of the INQUIRY CONCERNING Patrick C. McCORMICK, District Associate Judge, Third Judicial District,
Patrick C. McCORMICK, Respondent.
No. 01-1301.
Supreme Court of Iowa.
January 24, 2002.
*13 Thomas J. Miller, Attorney General, Roxann M. Ryan and Harold Young, Assistant Attorneys General, for the commission.
Mayer Kanter, Sioux City, for respondent.
CADY, Justice.
This is a judicial disciplinary action against a district associate judge for engaging in a political activity and misrepresentation. It is before us on an application by the state Judicial Qualifications Commission. The Commission recommended the judge be publicly reprimanded. We grant the application and agree on our review that the appropriate sanction for the unethical conduct engaged in by the district associate judge is a public reprimand.

*14 I. Background Facts and Proceedings.
Patrick C. McCormick is a district associate judge in the third judicial district of Iowa. He primarily holds court in Woodbury County. He was appointed to the bench in 1996 after practicing law in Iowa for thirty years. His father was a district court judge before him, and his grandfather was an Iowa lawyer. He has had no prior discipline imposed against him either as a judge or as a lawyer. Judge McCormick is married and lives with his wife in Sioux City.
Prior to the November 2000 elections, Judge McCormick was contacted by a campaign worker for Woodbury County Sheriff David Amick. Sheriff Amick was seeking reelection to office and was involved in a contested race. The campaign worker asked Judge McCormick if the campaign could place a sign supporting Sheriff Amick in the election outside Judge McCormick's home. Judge McCormick and Sheriff Amick were close professional friends, and Judge McCormick was the chairperson of a local committee that was considering the construction of a new county jail. Judge McCormick also had a son who worked for the sheriff's office. Judge McCormick consented to the campaign worker's request, and a campaign worker subsequently placed a sign in the front yard of his home. Judge McCormick believed the sign was proper as long as his wife also consented. His wife did not object to the sign after it was placed in the yard of their home.
On January 16, 2001, the Commission wrote Judge McCormick to advise him it was investigating a complaint it received regarding the campaign sign in his yard. The investigation was conducted by the Iowa Attorney General's office, which was assisted by the Department of Criminal Investigation.
On February 5, 2001, Judge McCormick wrote a letter to the Commission. He acknowledged the presence of the campaign sign in his front yard prior to the November election, but explained that his wife had been contacted by a campaign representative and authorized placement of the sign.
On March 2, 2001, the chairperson of the Commission wrote Judge McCormick to inform him that the complaint against him had been dismissed based on a preliminary investigation. Coincidentally, on the same date, Judge McCormick wrote the Commission to explain that his earlier explanation for the sign was false, and that he was the person who consented to the placement of the sign in his yard. The two letters crossed in the mail.
Judge McCormick testified at the Commission hearing that he initially used his wife to excuse his conduct because he thought it was the easiest way to respond to the complaint. However, he decided to truthfully respond to the Commission after his conscience began to bother him. Judge McCormick said he had difficulty sleeping at night and working during the day after writing the first letter to the Commission. He finally wrote the second letter after seeking advice from another judge.
Following a hearing, the Commission found Judge McCormick violated the canons of judicial conduct by placing a political sign in his yard. See Iowa Code of Judicial Conduct, Canon 2(B) (lending prestige of office to advance interests of others); Canon 7(A)(1)(b) (judge should not publicly endorse a candidate for public office); Canon 7(A)(3) (judge should not engage in political activity). It also found Judge McCormick violated the canons of judicial conduct by misrepresenting the circumstances surrounding the sign placement *15 to the Commission in his letter of February 5, 2001. See Canon 1 (judge should obey high standards of conduct); Canon 2(A) (judge should act to promote public confidence and integrity of the judiciary). The Commission also found both acts violated Iowa Code section 602.2106(3)(b) (2001) (willful misconduct in office and conduct which brings office into disrepute).
The Commission recommended that Judge McCormick be publicly reprimanded. It relied on Judge McCormick's efforts to rectify his misrepresentation to the Commission as a mitigating factor.

II. Scope and Standard of Review.
Our standard of review of a recommendation of judicial discipline by the commission on judicial qualifications is de novo. In re Inquiry Concerning Holien, 612 N.W.2d 789, 790 (Iowa 2000). Ethical violations must be proven by a convincing preponderance of the evidence. In re Inquiry Concerning Stigler, 607 N.W.2d 699, 705 (Iowa 2000).

III. Violations.

A. Political activities.
The strength of our judicial system is due in large part to its independence and neutrality. See Charles W. Wolfram, Modern Legal Ethics § 17.5.1, at 980 (1986) [hereinafter Wolfram]. These twin qualities help remove outside influences from judicial decision-making, and promote public respect and confidence in our system of justice. Yet, judicial independence does not come without some personal sacrifice by judges. Judicial independence and neutrality require judges to limit or abstain from involvement in a variety of activities commonly enjoyed by others in the community, including politics.[1]See id. Thus, beyond voting, judges must generally eschew most political connections. Id. § 17.5.4, at 986. The only exceptions in Iowa are political activities geared toward improving the law, the legal system, or the administration of justice, and some limited activities by judges in response to active opposition in their own retention elections. See Canon 7(A)(3), 7(B)(2). Canon 7(A) of the judicial code prohibits other political activities by judges, as a means to help maintain an independent judiciary and public respect and confidence in it. See Wolfram, § 17.5.4, at 986-87.
Under Canon 7(A)(1)(b) and (3), a judge may not publicly endorse a candidate for public office or engage in any other common political activities. Thus, a judge who allows a candidate for public office to place a sign in support of the candidate outside the judge's home publicly endorses a candidate for public office and engages in a prohibited political activity.[2] Judge McCormick clearly violated Canon 7. This activity also violated Canon *16 2(B). A judge lends the prestige of his or her office to advance the private interests of others by publicly endorsing a candidate for a public office. See Canon 2(B).

B. Misrepresentation.
A judge who makes a false statement to a judicial commission engages in conduct that adversely impacts the integrity of the judiciary and erodes public confidence in the judicial process. See Canon 1 (judge should uphold the integrity and independence of the judiciary); Canon 2(A) (judge should act in a manner promoting public confidence in the judiciary). Truth and honesty lie at the heart of the judicial system, and judges who conduct themselves in an untruthful manner contradict this most basic ideal. Consequently, a judge who misrepresents the truth tarnishes the dignity and honor of his or her office.
The evidence in the case clearly reveals Judge McCormick made a false statement in the letter he wrote to the Commission. He violated Canon 1 and Canon 2(A). The false letter also constituted willful misconduct, as well as conduct which brings the judicial office into disrepute, in violation of section 602.2106(3)(b). Thus, we turn to consider the sanction to impose.

IV. Sanction.
The focus of sanctions in judicial disciplinary proceedings is not to punish the individual judge, but to restore and maintain the dignity, honor, and impartiality of the judicial office, and to protect the public from further excesses. In re Stigler, 607 N.W.2d at 710; In re Harned, 357 N.W.2d 300, 302 (Iowa 1984). Thus, the sanction imposed must be commensurate with the conduct involved so that the integrity of the entire judicial process will be vindicated and reaffirmed. See In re Inquiry Concerning Eads, 362 N.W.2d 541, 551 (Iowa 1985).
Our prior cases have identified both aggravating and mitigating factors that bear upon the appropriate sanction in a particular case. See In re Holien, 612 N.W.2d at 793 (conduct in the performance of judicial duties prejudicial to the administration of justice); In re Stigler, 607 N.W.2d at 710 (conduct that denies individuals fundamental procedural rights; length and character of judge's service); In re Carstensen, 316 N.W.2d 889, 895 (Iowa 1982) (persistent pattern or practice of conduct). Some courts have distilled these factors, and others, into a nonexclusive list to consider in imposing discipline on a judge. This list is a helpful guide in structuring the appropriate discipline in a particular case. The factors include:
(a) whether the misconduct is an isolated instance or evidenced a pattern of [mis]conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his [or her] private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his [or her] conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his [or her] position to satisfy [any] personal desires.
In re Deming, 108 Wash.2d 82, 736 P.2d 639, 659 (1987); accord In re Chaisson, 549 So.2d 259, 266 (La.1989) (adopting criteria established in Deming); In re Brown, 461 Mich. 1291, 625 N.W.2d 744, 745 (1999) (listing similar criteria, and referencing *17 American Judicature Society, How Judicial Conduct Commissions Work 15-16); see also ABA/BNA Lawyers' Manual on Professional Conduct 01:838-39 (aggravating factors), 01:839-40 (mitigating factors) (1992). Nevertheless, in the end, each case must be carefully analyzed based on the particular transgressions involved. In re Stigler, 607 N.W.2d at 710.
Examined in light of the relevant factors, the misrepresentation in this case was clearly the most serious infraction. The political activity engaged in by Judge McCormick was a single, isolated event that occurred outside the courtroom in the course of his private life. Judge McCormick acknowledged his wrongdoing and was committed to refrain from engaging in the conduct again. Although most political activities undermine the integrity of the judicial system, the political activity engaged in by Judge McCormick in this case was not extensive or pervasive. Where a violation involves conduct that is negligent in nature, with little known injury, an admonition or a private reprimand is normally appropriate. See In re Inquiry Concerning a Judge, 788 P.2d 716, 725 (Alaska 1990).
Misrepresentation, on the other hand, is a more serious violation. A dishonest judge directly threatens public confidence in the judicial system and tarnishes its respect and integrity. See In re Kroger, 167 Vt. 1, 702 A.2d 64, 72 (1997). The harm is extensive. Even a single incident can have grave consequences. Id. Notwithstanding, there are mitigating factors in this case. Foremost is the evidence that Judge McCormick corrected his misrepresentation before it was discovered and at a time when his sole motivation to do so was his personal distaste for his prior actions and his desire for the truth to be spoken so the Commission could base its decision upon the truth. Furthermore, the conduct did not involve misrepresentation while under oath. Cf. id. (judge failed to tell truth after taking an oath to tell the truth when testifying as a witness at a public hearing). It was also an isolated act, uncharacteristic of his long, exemplary career as a lawyer and judge. Judge McCormick was profusely apologetic, and recognized the harm he caused.
We have not previously disciplined a judge for the type of conduct engaged in by Judge McCormick in this case. Yet, our review of sanctions imposed in other jurisdictions for misconduct involving deceit have ranged from reprimands, to suspensions, to removal, depending on the particular circumstances involved. See Adams v. Comm'n on Judicial Performance, 10 Cal.4th 866, 42 Cal.Rptr.2d 606, 897 P.2d 544, 568, 571 (1995) (removal of judge who provided false information to the judicial qualifications commission); In re Frank, 753 So.2d 1228, 1242 (Fla.2000) (public reprimand for judge for making false statement to grievance commission); In re Ford-Kaus, 730 So.2d 269, 277 (Fla. 1999) (removal of judge who demonstrated a pattern of deceit); In re Inquiry Concerning Fowler, 602 So.2d 510, 510-11 (Fla.1992) (public reprimand for judge who pled guilty to offense of furnishing false information to a police officer about an accident); In re Bybee, 716 N.E.2d 957, 962-63 (Ind.1999) (public reprimand for a judge for misrepresentation contained in a campaign brochure concerning another candidate for judicial office); In re Brennan, 433 Mich. 1204, 447 N.W.2d 712, 713-14 (1989) (public censure for law review article by judge containing plagiarized material); Kroger, 702 A.2d at 73 (one-year suspension for judge who presented false testimony at grievance commission hearing); In re Disciplinary Proceeding Against Ritchie, 123 Wash.2d 725, 870 *18 P.2d 967, 968 (1994) (repeated misrepresentations warranted removal from bench); In re Disciplinary Proceedings Against Dreyfus, 182 Wis.2d 121, 513 N.W.2d 604, 605 (1994) (fifteen-day suspension for filing false case reports).
Similarly, our discipline of lawyers in Iowa for conduct involving misrepresentation has covered the full spectrum of sanctions, from reprimands to revocation. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ackerman, 611 N.W.2d 473, 474 (Iowa 2000). We have said misrepresentation by an attorney constitutes serious misconduct. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein, 603 N.W.2d 574, 576 (Iowa 1999); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Humphrey, 551 N.W.2d 306, 308 (Iowa 1996). Misrepresentation is serious misconduct because "[f]undamental honesty is the base line and mandatory requirement to serve in the legal profession." Comm. on Prof'l Ethics & Conduct v. Bauerle, 460 N.W.2d 452, 453 (Iowa 1990). "The court system and the public [it] serve[s] are damaged when our officers play fast and loose with the truth." Id. Clearly, these same observations we have made about lawyers apply to judges. Likewise, the resulting sanctions should typically be comparable. Generally, the sanctions we have imposed for lawyers have varied due largely to the nature of the misrepresentation and whether it involved a pattern of conduct. See Ackerman, 611 N.W.2d at 474-75. This same approach can generally be observed in those cases by courts from other jurisdictions involving misrepresentation by judges.
Considering all the circumstances in this case, we conclude a public reprimand is a more appropriate sanction than a suspension, although the decision is very close. In reaching this conclusion, we give weight to the recommendation of a public reprimand by the Commission. Furthermore, the circumstances of this case are more aligned with those cases from other jurisdictions that imposed a public reprimand for similar misconduct. Finally, there are mitigating factors previously identified that support the imposition of a public reprimand. Although Judge McCormick's indiscretion in submitting false information to the Commission was serious, he revealed his true character by his subsequent actions in revealing the truth. Consequently, we reprimand Judge McCormick for his conduct.
JUDICIAL OFFICER REPRIMANDED.
NOTES
[1] The Anglo-American paragon for a judge is a person who is "learned in the law" and is "independent of governmental, political, social, economic, [and] other predisposing influences." Wolfram, § 17.5.1, at 980. This independence allows a judge to decide cases based solely on legal principles and judicial experience and thinking. Id. Consequently, the judicial canons that have developed in our country not only limit the manner in which a judge may be involved in politics, but also in finance, business, the practice of law, and many other public and private activities. Id. The broad nature of the restricted activities poignantly reveals the extent of the personal sacrifice that can be made by judges to maintain judicial independence.
[2] We do not address those circumstances governing the responsibilities of a judge whose spouse places a political campaign sign in the yard of the marital home. Judge McCormick testified he was responsible for placing the sign in this case, and we confine our analysis to the facts of this case.